CASE 14—PETITION EQUITY—JUNE 18.

# Lowry vs. Fisher, &c.

APPEAL FROM JESSAMINE CIRCUIT COURT.

1. The renewal of a note is not a satisfaction of the debt. It is only a change of the evidence of the debt; and in this case, such renewal did not destroy the rights which the statute secured to the creditors prior to the conveyance. (*McLaughlin vs. Bank of Potomac et al.*, 7 *Howard*, 228.)

2. It is the *intent and purpose* with which the grantor acts that characterizes the conveyance and renders it fraudulent under the statute. Conveyances, when a man *owes*, are not prohibited; but conveyances, with the "intent or purpose to delay, hinder, or defraud creditors," &c., are declared void, except so far as they may affect the grantor, his heirs, &c. Indebtedness to a large amount in proportion to the value of the grantor's estate might, no doubt, authorize the conclusion in many cases that his *intent and purpose* were fraudulent. (*Lyne, &c., vs. Bank of Kentucky*, 5 *J. J. Marshall*, 554.)

3. A conveyance to a man's children when he was indebted *to a material extent* would be invalid as to all creditors, whether the liabilities were pre-existing or subsequently created. (*Doyle and others vs. Sleeper and others*, 1 *Dana*, 533.)

4. Although the debtor may not at the time have been insolvent, or so much involved at the date of the deed (to one of his sons, as alleged, as an advancement) as to render the residue of his estate then necessarily insufficient to pay his debts, yet if he was involved "*to a material extent*"—by which we are to understand an extent which might, in view of ordinary contingencies, endanger the rights of his creditors—then the deed was constructively fraudulent as to subsequent as well as pre-existing debts; for in such a case a fraudulent intent is implied; and the deed was void for express fraud, if, from the extent of the grantor's indebtedness, compared with his means of paying, the unreasonableness of the conveyance as an advancement, considering the claims of the other children, and other attending circumstances, the inference is justified that the grantor made the conveyance for the purpose of avoiding the payment of his liabilities.

5. Creditors who set aside a conveyance of the husband because it was fraudulent and void as to him, are not entitled to a judgment for the sale of his wife's dower in the land conveyed because she signed and acknowledged the deed with her husband.

HUNT, BECK, & CLARK and THOS. P. POR-
TER, For Appellant,
CITED—

3 *Johnson's Ch. Rep.*, 501; *Read vs. Livingston.*

9 *B. Mon.*, 514; *Trimble vs. Ratcliffe.*

1 *American Leading Cases, p.* 34.

1 *Conn. R.*, 525; *Salmen vs. Bennett.*

*Rev. Stat.,* sec. 2, chap. 40, p. 546.

1 *Met.*, 351; *Enders vs. Williams.*

4 *J. J. Mar.,* 3; *Castleman vs. Holmes.*

1 *Met.*, 25; *Haskin vs. Parsons.*

2 *B. M.*, 303.

1 *Met.*, 252.

4 *Met.*, 247; *Havins vs. Fondy.*

3 *Met.*, 437; *Russell's ex'r vs. Moore's heirs.*

18 *B. Mon.*, 649–50; *Emmons vs. Overton.*

16 *Vesey*, 250; *Daniels vs. Davidson.*

14 *B. Mon.*, 457; *Bryant vs. Proctor.*

7 *Mon.*, 515; *Hanson vs. Cowan.*

6 *J. J. M.*, 1; *Fowler vs. McChord's adm'rs.*

J. S. BRONAUGH, For Appellees,
CITED—

1 *Rev. Stat.*, 546.

7 *Howard*, 228–9.

2 *Met.*, 207.

2 *Johnson's Ch. Rep.*, 454.

4 *Johnson's Ch. Rep.*, 123.

17 *John.*, 584.

3 *Paige's R.*, 117.

8 *Wall's R.*, 384.

Lowry vs. Fisher, &c.

3 *John. Ch. R.*, 497.

1 *Dana*, 533.

4 *Dana*, 255.

5 *J. J. M.*, 554.

8 *B. Mon.*, 567–8.

12 *B. Mon.*, 445.

2 *Cal. R.*, 125.

2 *Yerg. R.*, 346.

6 *Rand. R.*, 98.

2 *Dana*, 296.

2 *Dana*, 276.

*Roberts on Frauds*, 17, 418.

1 *Story's Equity, sec.* 498 *and references;*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

James H. Lowry, of Jessamine county, being the owner of about one thousand four hundred and twenty-four acres of land, some thirty-six slaves, and valuable personal property, the whole of the approximate value of one hundred thousand dollars, on the 3d day of March, 1859, conveyed to his son, James Knight Lowry, a tract of about three hundred and five acres of the land as an advancement to him, at the estimated value of eighteen thousand six hundred dollars.

These several suits were brought in 1862 and 1863, to set aside said deed and subject the land to the satisfaction of various debts due from James H. Lowry to the plaintiffs originally, or which they had paid or were liable for as his sureties, upon the alleged ground that he was insolvent, and that the deed was made in fraud of their rights as his creditors and securities.

The judgment sought by the plaintiffs was resisted by both James H. and James Knight Lowry, who denied the alleged fraud in the execution of the deed, and in-

sisted that, at the time the deed was made, the property given and conveyed by James H. to James Knight Lowry was not more than a proper and reasonable advancement to the latter considering the circumstances of his father; and they further alleged, that although the title to the land remained in J. H. Lowry till March 3d, 1859, he had long before given it to J. K. Lowry, who was in possession at the date of the deed.

The circuit court, upon final hearing, adjudged that said conveyance was fraudulent and void as to the creditors of James H. Lowry, and directed a sale of the land to satisfy the plaintiff's debts, both antecedent and subsequent in date to the deed. And from that judgment James Knight Lowry prosecutes this appeal.

Of the debts asserted in the several suits, it satisfactorily appears that so much of them as amounted to near seven thousand dollars was created before the deed was made.; and although there is some controversy as to whether some of the other debts were or not renewals of debts existing before the date of the conveyance, although evidenced by notes of a later date, the evidence conduces to show that a further portion of the debts, amounting to near nine thousand dollars, was of this description, while the balance of the claims, amounting to about four thousand dollars, originated after the deed was made.·

By *section* 2 *of chapter* 40, *of the Revised Statutes, volume* 2, *page* 546, it is declared, that " every gift, conveyance, assignment, transfer or charge, made by a debtor of, or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities; but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted, or as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to

be void as to prior creditors, it shall not therefore be decreed to be void as to such subsequent creditors or purchasers."

It seems to us this statutory provision is fatal to the conveyance, so far as pre-existing debts are concerned. But it is insisted for the appellant, that all those who assert claims of date subsequent to the 3d of March, 1859, are to be regarded as "subsequent creditors, within the meaning of the statute, no matter whether the debts themselves existed before that date or not; and we are referred to the case of *Castleman vs. Holmes*, 4 *J. J. Marshall*, as authority in support of this view. That was an action by a creditor of the Fayette Paper Manufacturing Company, to compel the stockholders to contribute to the payment of a debt of the corporation, under a provision of the charter, which devolved the liability upon such persons as were stockholders at the time the debt was contracted to be paid. The debt was originally contracted by the company in 1816, and was several times renewed prior to the 8th day of December, 1819, when the note in contest was given.

The question then was, who were liable to contribute to pay the debt, the stockholders of 1816 or of 1819? and the court held that the latter were, because they composed the corporation when it last contracted to pay the debt. Conceding the general principle that the execution of a new note or promise to pay discharges the obligation of the old one, yet there are rights often arising out of the original transaction which adhere to the consideration and are not extinguished by the renewal, as the lien of a vendor, which is not impaired by the renewal of a note for purchase money. (*Honore's ex'or vs. Bakewell*, 6 *B. M.*, 72.) The renewal of a note is not a satisfaction of the debt—it is only a change of the

evidence of the debt; and in this case, in our opinion, such renewal did not destroy the rights which the statute secured to the appellees as creditors of James H. Lowry, prior to his conveyance to the appellant. This conclusion is fortified by the opinion of the supreme court of the United States, in the case of *McLaughlin vs. Bank of Potomac et al.*, 7 *Howard*, 228, in which it is said: "In our view, a pre-existing debt by a note which was only renewed afterwards, with the same indorsers, continued to be the same pre-existing debt for this purpose as it stood originally, both as to the maker and indorser. They both regarded it virtually as the same, as no new consideration ever arose between the parties, especially on the equity side of this court and of the circuit court below, where the question arises. Such a case ought to be regarded as much within the mischief of the statute against fraudulent conveyances, as if the action leading to judgment against the administrator had been on the original indorsement of the original note."

But the validity of the deed is assailed by the appellees, not only because it is a voluntary conveyance without consideration, but on the further ground that it was made with the fraudulent intent to hinder and delay the grantor's creditors, and is consequently invalid as to subsequent as well as pre-existing debts. If this ground is sustained, the question just under consideration becomes mainly immaterial.

So far as this question is concerned, the provisions of the Revised Statutes, on the subject of fraudulent conveyances, are substantially the same as those of the second section of the act of 1796, "to prevent frauds, &c." Authorities, therefore, which would have been applicable to this question before the Revised Statutes, are equally so now.

In *Lyne, &c., vs. Bank of Kentucky* (5 *J. J. Marshall*, 554), it is said:

"It is the *intent and purpose* with which the grantor acts that characterizes the conveyance and renders it fraudulent under the statute. Conveyances, when a man *owes*, are not prohibited; but conveyances with the '*intent or purpose to delay, hinder, or defraud creditors*,' &c., are declared void, except so far as they may affect the grantor, his heirs, &c. Indebtedness to a large amount in proportion to the value of the grantor's estate might, no doubt, authorize the conclusion, in many cases, that his *intent and purpose* were fraudulent."

And in *Doyle and others vs. Sleeper, &c.* (1 *Dana*, 533), which was a writ of error to reverse a decree subjecting to the debts of Doyle certain lots which, by his procurement, had been conveyed to his children, it was held, that "the consideration of blood may be sufficient, as against subsequent creditors, unless the conveyor was indebted at the date of the conveyance. But such indebtedness to a material extent would invalidate the deed as to *all* creditors. Such is the doctrine of legal or constructive fraud, established by a long series of adjudications upon the statute of 13*th Elizabeth*, which has been substantially incorporated into a statute of this State; and the same interpretation of the latter statute has been adopted by this court."

From the above and other authorities the principal may be deduced, that although James H. Lowry may not at the time have been insolvent, or so much involved at the date of the deed as to render the residue of his estate then necessarily insufficient to pay his debts, yet if he was involved "*to a material extent*," by which we are to understand an extent which might, in view of ordinary contingencies, endanger the rights of

his creditors, then the deed was constructively fraudulent as to subsequent as well as pre-existing debts; for in such a case a fraudulent intent is implied; and the deed was void for express fraud, if, from the extent of the grantor's indebtedness, compared with his means of paying, the unreasonableness of the conveyance as an advancement to the appellant, considering the claims of other children, and other attending circumstances, the inference is justified that the grantor made the conveyance for the purpose of avoiding the payment of his liabilities.

As to the amount of James H. Lowry's indebtedness on the 3d of March, 1859, there is some contrariety of evidence. But the conclusion is warranted, that, of debts strictly his own, in which he was neither the surety or partner of others, he owed not less than twenty thousand dollars, and probably much more. He was, moreover, largely involved as the security of various persons, whose circumstances justified the apprehension that much of this indebtedness would be devolved upon him. He was also liable for large amounts as the partner of Charles F. Lowry, in a mercantile establishment at Lexington, as was afterwards judicially determined.

The evidence conduces strongly to the conclusion that his entire indebtedness at the date of the deed was largely more than fifty thousand dollars, for a very considerable portion of which he was at that time pressed for payment with judgments and executions. He was at that time near sixty years of age. Having been twice married, he had one other child besides the appellant, who was grown and married, besides three or more children of his second marriage, some of whom were quite young. He appears to have advanced other property to J. K. Lowry, but none to either of his other children.

It can scarcely be supposed that he himself, in his embarrassed condition, merely intended by the conveyance to make to his son a reasonable advancemant, without detriment to his creditors, certain or contingent; but as he had no right to jeopardize the rights of his creditors and sureties by giving away his property, even to one of his children, thus hastening—at least rendering more certain—their involvement and loss by his failure, which soon after became manifest. Whether, in making the deed, he actually intended detriment and loss to his creditors or not, we are impelled to the conclusion, from all the facts and circumstances of the case, that it was a fraud upon their rights, and void, at least so far as it purports to convey his title, both as to his pre-existing and subsequent liabilities.

Whether the deed was also void as between Mrs. Jane B. Lowry and J. K. Lowry, or operated to vest in him such right of dower as she had in the land, it is not necessary now to decide; but as the judgment of the court below in effect directs a sale of said dower interest, which was not liable to the debts of J. H. Lowry, if the deed had not been made, it is deemed erroneous in this particular, and will be reversed.

As to the claims of James H. Lowry against Fisher and Campbell for contribution for payments alleged to have been made as their co-surety, it is sufficient to observe, so far as Fisher is concerned, that the facts alleged for the purpose of fixing a liability on him are controverted, and not sustained by any evidence; and as to Campbell, although his name is shown to have been upon a note with Charles F. Lowry and James H. Lowry to Elisha Warfield, on which J. H. Lowry appears to have paid about two thousand two hundred dollars, the conclusion is authorized by the evidence, both that the

debt was one in which J. H. Lowry, as a partner of C. F. Lowry, was a principal obligor, and that the name of Campbell was procured to the note at his instance and as his surety.

Wherefore, perceiving no error in the judgment, so far as it adjusts and allows the claims of the appellees, and subjects the title of James H. Lowry to their satisfaction, the same is affirmed; but so far as said right of dower is embraced or affected by the order of sale, it is reversed, and the cause remanded, with directions to enter a judgment in conformity to this opinion.