Verdict for defendants.

---

### LEE, Assignee, v. HOLLISTER and others.*

*(District Court, D. Kentucky. December, 1880.)*

1. PROMISSORY NOTES—PAYMENT—RENEWALS.

Where A. and B. executed a note on January 10, 1873, at four months, for $5,000, which was discounted by the Covington National Bank, and at its maturity A., the principal, gave his check upon that bank for the amount of the note and took it up, and A. and B. gave a new note, which was discounted by the bank, and the proceeds placed to A.'s credit to pay the maturing note, and this transaction was repeated at intervals of four months until February 23, 1878, when the note in suit was executed, *held*, that the debt created in January, 1873, had not been paid, and that these new notes were merely renewals.

2. SUIT TO SET ASIDE CONVEYANCES — KENTUCKY — WIFE'S MONEY, SLAVES, AND LAND — FUNDS FURNISHED TO HUSBAND — VALUABLE CONSIDERATION—KENTUCKY STATUTE AGAINST FRAUDULENT CONVEYANCES—CONSTRUCTION—PRIOR AND SUBSEQUENT CREDITORS.

In a suit by an assignee in bankruptcy of H. to set aside two conveyances made to H.'s wife in 1874, it appeared that in 1850, when they were married, she was possessed of a large property, consisting of money, slaves, and land, inherited from her father. There was no

---

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

antenuptial agreement. Before H. received any part of her estate, he promised to invest an amount equal to what he received in real estate for her use, and place the title in her name, and this promise was frequently repeated and recognized up to the time the conveyances were made. At different times before 1856 the husband received various sums of money from his wife's guardian and her father's executor, and from the sale of her slaves and land. At the time of his marriage he was in a good business, and continued to improve his fortune until after the conveyances were made. In 1874 he sold out his interest in business to his partners, and received as part of the consideration the two lots in controversy, which he had conveyed directly to his wife. He was not then embarrassed, and did not become so until subsequently; and there was no evidence of actual fraud. At the time said conveyances were made, H. was surety on a note for $5,000 to the Covington National Bank. The Kentucky statute against fraudulent conveyances (Gen. St. *c.* 44, § 2, p. 488) provides that every "conveyance * * * made by a debtor, of * * * his estate, without valuable consideration therefor, shall be void as to all of his then-existing liabilities, but shall not, on that account alone, be void as to others creditors whose debts or demands are thereafter contracted; * * * *and though it be adjudged to be void as to a prior creditor, it shall not, therefore, be deemed to be void as to such subsequent creditors.*"

3. JURISDICTION OF COURT OF EQUITY.

*Held,* (1) that a court of equity has jurisdiction of such a suit.

4. HUSBAND'S MARITAL RIGHTS—WIFE'S MONEY—VALUABLE CONSIDERATION.

(2) As the husband was entitled by virtue of his marriage to his wife's personal estate, that her consent to collect her money was not a valuable consideration for such conveyance.

5. WIFE'S REAL ESTATE AND SLAVES—VALUABLE CONSIDERATION.

(3) As by the Kentucky statutes the wife's slaves, like her land, could be disposed of only by her uniting in the conveyance, that, to the extent of the money which he received from the sale of her land and slaves, the conveyances were supported by a valuable consideration.

6 VALUABLE CONSIDERATION—ONE DEED SUSTAINED.

(4) As the proceeds received from the land and slaves, with interest, amounted to about the sum recited in each deed as its consideration, and from the acknowledgment of one it appeared to have been executed first, that such conveyance was supported by a valuable consideration, and would not be set aside.

*Pryor, Assignee,* v. *Smith,* 4 Bush, 379; *Darnaby* v. *Darnaby,* 14 Bush, 485, distinguished.

7. SECOND CONVEYANCE—WITHOUT VALUABLE CONSIDERATION, VOID AS TO EXISTING DEBTS.

(5) That the second conveyance was without valuable consideration, and that under the Kentucky statute against fraudulent con-

v.5,no.9—48

veyances it was void as to the then existing debt to the Covington National Bank, and would be set aside and the lot sold.

8. DISTRIBUTION—SUBSEQUENT CREDITORS NOT ENTITLED TO SHARE IN.

(6) That subsequent creditors are not entitled to share in the proceeds of such sale, but they will be distributed to pay costs, the bank's claim without interest, and the balance, if any, to the wife.

*Kehr* v. *Smith*, 20 Wall. 36, and statute 13 Elizabeth, *c.* 5, distinguished.

*Benton & Benton*, for assignee.

*C. Eginton*, for Mrs. Hollister.

BARR, D. J. This is a suit brought by the assignee in bankruptcy of Hudson Hollister to set aside two conveyances made to his wife, Mary H. Hollister, in January, 1874.

The facts proven in the record are briefly these:

Mary McConnell married Hudson Hollister on the tenth of June, 1850. Her father was then dead, and she had inherited one-fifth of his estate, consisting of land, negroes, and some money, estimated to be worth $50,000.

There was no antenuptial agreement; but it is clearly proven that Hudson Hollister, before he received any part of his wife's estate, promised her that if she would allow him to collect and use her money he would invest an equal amount in real estate for her use and benefit, and place the title in her name. This promise was frequently repeated and recognized by the bankrupt until the conveyances were made in 1874. Hudson Hollister received of his wife's guardian $2,202.08, and from the executor of her father's estate some more money, but the amount is not proven. Mrs. Hollister was allotted, in the division of her father's estate, six negroes, and had an interest in the homestead of her father and some lands in Carter county. Two of the negroes were sold, and the proceeds collected by Hollister and used by him under the promise which he had made his wife. They brought $1,100, of which sum $500 was collected probably in 1852 or 1853, and $600 in 1855 or 1856. Her interest in the homestead was sold in 1852 or 1853 for $1,000, and was probably collected and used by her husband under the promise mentioned. There is some difference in the testimony whether this land was paid for in money or negroes. It is,

however, not material, as Hollister took and used the negroes as his own property.

Hudson Hollister was, at the time of his marriage and the time he promised his wife as stated above,' in a good business, with a fair capital, and he continued to improve his fortune until some time after the conveyance of January, 1874. He sold out his interest in his business to his partners in January, 1874, for $25,000. He received as part of the purchase money the two lots in controversy, which he had conveyed directly to his wife. These conveyances are dated January 26, 1874, and each recites a cash consideration of $5,000 paid by Mary H. Hollister. The firm from which Hollister retired was prosperous, and was abundantly able to and did pay all of its debts. Hollister himself was not embarrassed or largely indebted. He became embarrassed subsequently, and on the sixteenth day of April, 1878, filed his petition to be declared a bankrupt, and he was so adjudged, and complainant appointed his assignee.

The City National Bank of Covington has proven a debt against the bankrupt for $5,000. This is a joint note of Hollister and his brother-in-law, W. W. Leathers, payable to the bank, dated February 23, 1878, at four months. It appears that a similar note was executed by these parties dated January 10, 1873, which was discounted by that bank, and has been renewed from time to time, at intervals of four months, until the note of February 23, 1878, was executed. These notes were joint, and were in fact for the benefit of Leathers, who obtained all the money from the bank.

The assignee, Lee, has brought this suit for the purpose of setting aside these conveyances by the bankrupt to his wife, as voluntary and without consideration, and as such void as to this debt of $5,000, which is claimed to have been a subsisting one at the time of the conveyances. His original bill asked that these conveyances be declared fraudulent and void as to the debt of the bank, and that the property be subjected to the payment of the bank's debt and interest. He subsequently filed an amended bill alleging that these conveyances were fraudulent as to all of the bankrupt's creditors, and

asking that the property be subjected to the payment of the debts of the bankrupt *pro rata.*

The bank was made a party, and in a cross-bill insists that these conveyances were voluntary, and are fraudulent and void as to its debt, and insists that it should be paid its entire debt out of the proceeds of the property, when subjected and sold.

Mrs. Hollister and her husband have answered the bill and cross-bill. They deny that the bank debt was a subsisting one when the conveyances were made, January, 1874, and insist that Hollister was in fact the surety of Leathers in the original debt, and that it was paid at its maturity by Leathers, with the proceeds in part of another note discounted for the same amount. They insist that the execution of the last note was the creation of a new debt, and not the continuance of an old one. They deny that the conveyances were voluntary and without consideration, and allege they were executed for a valuable consideration. This consideration is alleged to be the estate which the bankrupt received from his wife, and the promise made before he received it to invest an equal amount for her benefit in real estate, placing the title in her. They allege in an amended answer that there was an antenuptial agreement, but as there is no proof of this, it may be dismissed from the case.

There are four questions arising, and which have been argued by counsel: *First,* has a court of equity jurisdiction? *Second,* is the debt proven by the Covington National Bank the same debt existing at the time of the conveyances? *Third,* if so, were they made for a valuable consideration, or were they merely voluntary? *Fourth,* if these conveyances, or either of them, are voluntary, and hence fraudulent and void, shall the proceeds of a sale be divided *pro rata* between all of the bankrupt's debts, or shall the bank's debt have preference?

We shall consider these questions in their order. Mrs. Hollister has the legal title, and the suit is to set aside the conveyances to her because they are fraudulent and void. The remedy at law is not, we think, adequate or plain. The

jurisdiction of a court of equity has been frequently sustained in such a case, or in very analogous ones. *Humes* v. *Scruggs,* 94 U. S. 23; *Shelton* v. *Tiffin,* 6 How. 163; *Massey* v. *Allen,* 7 N. B. Reg. 401; *Shackleford* v. *Collier,* 6 Bush, 149; *Pratt* v. *Curtis,* 6 N. B. Reg. 139.

It is proven that the original note of Leathers and Hollister was discounted at the request of Leathers, who was a director in the bank, and that the proceeds were placed to his credit. The proceeds of each note, as discounted, were placed to the credit of Leathers, who gave his check for the amount of the matured note and took it up. The cashier testified that the proceeds of the renewals were always placed to Leathers' credit, upon the express understanding that they were to be used to pay the maturing note.

The question, whether or not the giving of these checks for the amounts of the matured notes as they fell due and their surrender to him is a payment, is one about which there is some conflict of authority. Mr. Parsons thinks such facts make a payment. 2 Parsons, Bills and Notes, 203; see, also, *Bank Commonwealth* v. *Letcher,* 3 J. J. Mars. 195; 1 Dana, 83.

I am, however, of the opinion that the debt created in January, 1873, has never been paid, and that these notes were renewals which merely changed the evidence of the debt. The entering of the credits to Leathers when each note was discounted, and his giving his check for the amount of the matured note, was simply a mode by which the evidence of the debt was changed. 2 Daniells, Neg. Inst. 260; *McLaughlin* v. *Bank Potomac,* 7 How. 228; *Lowrey* v. *Fisher,* 2 Bush, 74; *Bank of America* v. *McNeil,* 10 Bush, 55.

The next inquiry is whether or not these conveyances were made without valuable considerations; and this brings us to consider the effect of the post-nuptial parol agreement.

When Mr. Hollister married in 1850 he became, by virtue of his marriage, entitled to collect and reduce into possession all of his wife's personal estate. This was subject to the wife's equitable right of settlement, but as the evidence shows there was no such right in the wife in this case, we shall

assume that his right to collect his wife's money was absolute, whether she consented or not. Hence, a parol promise based upon such a consent would not be for a valuable consideration.

But Mr. Hollister's marital rights in his wife's land and slaves were very different from that which he had in her money or personalty. Under the act of 1846 the slaves of a wife were, in effect, held in the same manner as her real estate, and neither her land nor slaves could be sold without her consent. It is true that the act of 1846 was somewhat changed by the Revised Statutes which became the law July 1, 1852, but that part of the law which required the wife's consent to the sale of her slaves remained unchanged. The proceeds of the wife's slaves sold after July 1, 1852, would be the husband's, "unless otherwise expressly provided in the conveyances or the obligation of the purchaser;" but the husband could only sell the wife's slaves in the same mode as her land, which could only be done by her uniting in the conveyance. 2 Rev. St. c. 47, § 2, p. 9.

When Mr. Hollister made his parol promise in consideration of Mrs. Hollister's consent to the sale of two of her slaves, and her interest in the homestead of her father, it was made upon a valuable consideration,—to the extent, at least, of the proceeds of the slaves which Mr. Hollister was enabled to collect. Mrs. Hollister was giving and Mr. Hollister receiving more than his marital rights entitled him to, and to that extent this parol agreement is based upon a valuable consideration. 1 Bishop on Married Women, §§ 721–2. The purchase money received by the bankrupt for the two slaves was $1,100, and for her interest in the homestead was $1,000. The interest on this from say Janaury 1, 1854, to January 1, 1874, would be $2,520. This, added to the principal debt, would make $4,620. The time of these sales was, at least as to one of them, sometime before January 1, 1854, so that the proceeds of these sales, with interest, would not be far from $5,000. This would be a valuable consideration to sustain one of these conveyances.

The record does not disclose any difference in the value of

the lots conveyed to Mrs. Hollister. The consideration recited in the deeds is the same amount, and the deeds are of the same date. The conveyance made by Thomas G. Randall seems to have been acknowledged first. I shall therefore decide that conveyance is sustained by a valuable consideration, and refuse to set it aside. *Miller* v. *Edwards*, 7 Bush, 393; *Latimer* v. *Glenn*, 2 Bush, 535.

In coming to this conclusion, I have not overlooked the lapse of time between the receipt of the proceeds of these sales by the bankrupt and the execution of his parol agreement. But this agreement was executed by the bankrupt at a time and under circumstances which made it quite proper he should do so. He was abundantly able to have paid all of his debts, and have a handsome estate left. The cases of *Pryor, Assignee,* v. *Smith*, 4 Bush, 379, and *Darnaby* v. *Darnaby*, 14 Bush, 485, are unlike these cases. In those cases the parol agreement had not been executed, and its execution was sought by the wife against the creditors of an insolvent husband.

There is nothing in this record tending to prove actual fraud upon the part of the bankrupt or his wife either in the making of this parol agreement or its execution. The only claim the assignee or the bank can have to set aside the conveyances of either of these lots is under the provisions of the second section of the Kentucky statute against fraudulent conveyances, which provides that "every gift, conveyance, assignment, transfer, or charge made by a debtor of or upon any of his estate, without valuable consideration therefor, shall be void as to all of his then existing liabilities, but shall not on that account alone be void as to creditors whose debts or demands are thereafter contracted; * * * and, though it be adjudged to be void as to a prior creditor, it shall not therefore be deemed to be void as to such subsequent creditors." Gen. St. *c.* 44, § 2, p. 488. This section is peremptory. The only inquiry is whether the conveyance was without a valuable consideration, and are there and were there existing liabilities of the grantor? If the conveyance is without a valuable consideration, it is void as to existing lia-

bilities. *Todd* v. *Hartley*, 2 Met. 207; *Lowry* v. *Fisher*, 2 Bush, 70; *Miller* v. *Disho*, 3 Bush, 215.

There is no evidence to prove that the bankrupt obtained the proceeds of any other of his wife's slaves or land. Her other slaves seem not to have been sold, but were emancipated, no doubt, by the thirteenth amendment to the federal constitution. They were not her husband's under this parol agreement, and their emancipation was her loss and not his. Her land in Carter county remains unsold. When witnesses speak of the bankrupt receiving $10,000 or $12,000, they evidently include these slaves.

I therefore conclude that the other conveyance, that from Norwood H. Sinclair to Mrs. Hollister, was without a valuable consideration, and, under the statutes, void as to existing liabilities of the bankrupt. This liability is $5,000 due Covington National Bank, less $60 rebate and $988 paid by the estate of Leathers; leaving a balance of $3,952, without interest.

The right to bring suit to set aside this deed is in the assignee of the bankrupt alone, and as Hollister's bankruptcy stopped the receiving of interest on all his debts, including that held by Covington National Bank, the conveyance of Sinclair will be set aside, and the property sold to pay the sum of $3,952, without interest.

Whether the proceeds of this property, when sold, shall be divided *pro rata* between all of the creditors of Hollister, or the national bank have priority, is a question of much difficulty.

The supreme court says, in *Kehr* v. *Smith*, 20 Wall. 36: "It is well settled, when a deed is set aside as void as to the existing creditors, that all the creditors, prior and subsequent, share in the same *pro rata*."

If that case is like this one, its authority is conclusive upon this court. It was first decided by Judge Treat, and arose under the Missouri statute. See 7 N. B. Reg. 27.

The bill in that case alleged fraud, and the court so held, because, at the time of the conveyance by the bankrupt to the trustee of his wife, there was not sufficient property

remaining, after deducting the property conveyed, to pay his then existing creditors. The learned judge evidently came to his conclusion in regard to the division of the proceeds of the sale of the property with some reluctance. In the course of an able opinion he uses this language: "Were the question to be decided for the first time, there might be some hesitancy in holding that a deed void as to existing creditors was to be considered void as to all creditors, for practically such is the effect of letting in subsequent creditors, especially to share *pro rata.* The courts hold, with great uniformity, that the deed will not be set aside at the instance of subsequent creditors; yet they give to the latter the same benefit where the prior creditors cause it to be set aside. Why such discrimination as to the right to attack the deed, where there is not as to sharing in the results?"

The decisions of which the learned judge writes arose under the statute of 13 Eliz. *c.* 5, or statutes which are substantially copies of that statute. The Missouri statute, § 2, is substantially a copy of 13 Elizabeth. The first section of the Kentucky statute is substantially a re-enactment of 13 Elizabeth. The second section of the Kentucky statute gives a legislative construction to the first section as to voluntary conveyances and existing debts, or more properly it is an additional enactment. Under the second section, a gift, conveyance, assignment, transfer, or charge of a debtor's estate, made without valuable consideration, shall be void as to his existing creditors; "and, though adjudged to be void as to a prior creditor, it shall not, therefore, be deemed to be void as to subsequent creditors."

The statute of 13 Eliz. *c.* 5, was enacted to prevent gifts, conveyances, etc., by a debtor, with the "intent to delay, hinder, or defraud creditors and others of their just and lawful actions," etc. The second section of the Kentucky statute does not require an "intent to hinder, delay, or defraud creditors;" but voluntary conveyances, as to existing debts, are void without regard to intent.

If such conveyances are void with the intent to hinder,

delay, or defraud creditors, then they are fraudulent and void as to all creditors, subsequent as well as prior. In such a case the proceeds of the property, thus conveyed, would and should be divided between creditors *pro rata*.

But when there is no such intent, and the conveyance is void because of the enactment of the second section of the statute, I think the existing creditors should have priority; and, if there is any balance after paying the existing debts, it should go to the wife of the bankrupt. *Todd* v. *Hartley*, 2 Met. 207. The right of the wife to this balance should be recognized, because of the language of the statute, and because of her equity.

The complainant's bill as to the conveyance by Randall to her (Mrs. Hollister) is dismissed without costs, and the conveyance to Mrs. Hollister by Sinclair is set aside, and the property ordered to be sold, and the proceeds applied to the payment of the complainant's costs; the debt due the national bank, $3,952, without interest, and the balance, if any, to be paid over to defendant Mary H. Hollister.