## Stix, et al v. Calender, et al.

(Decided November 18, 1913.)

### Appeal from Owen Circuit Court.

1. Husband and Wife—Action to Subject Notes of Wife to Husband's Debts—Burden of Proof.—The rule is that the burden of proof is upon the creditor to show that the property belongs to the debtor, and that it has fraudulently been transferred to the wife. But when it is shown, as in this case, that the property never did belong to the wife until the transfers and loans referred to, and that at the time the husband was insolvent, it devolves upon the wife to show that there was a valid consideration for the transfer, and in this case she has failed.

2. Husband and Wife—Transferring Property to Wife—Agent of Wife.—A man cannot protect his property against the demands of creditors by simply transferring it to his wife and managing it for her as agent.

3. Husband and Wife—Action to Subject Notes of Wife to Husband's Debt—Evidence of Wife—Competency.—In a proceeding to attach in the hands of garnishees the proceeds of two notes payable to the wife which it was alleged were transferred to the wife to prevent them from being subjected to the husband's debts, she was not an incompetent witness. Since he made no claim to the property, she was not testifying against him, but for herself.

BOTTS & PERRY for appellant.

JAMES H. SETTLE for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This is an action upon a return of *nulla bona* by the appellant as a creditor of J. W. Calender. Numerous parties are proceeded against as garnishees, and among them is Ida Calender, the wife, and G. W. Edmonson, the brother-in-law of J. W. Calender, and Theodore Edmonson, a brother of G. W. Edmonson.

The purpose was to discover and attach in the hands of the garnishees the proceeds of two notes, one for $900.00 and the other for $1,900.00, payable to Ida Calender, and executed by the Edmonsons. It was alleged in the petition that the money representing these sums was fraudulently, and without any consideration by J. W. Calender, placed in the hands of and transferred to his wife, Ida Calender, and then by her loaned to the Edmonsons, and this was done to prevent appellants

from realizing on their judgment which they then had against J. W. Calender, and that, as a matter of fact, J. W. Calender was the real and beneficial owner of the notes, and that appellants were entitled to subject the proceeds to the payment of their judgment which amounted to $832.00 less a credit of $150.00.

The proof shows that for a number of years prior to these transactions J. W. Calender was doing a large business at the town of Jonesville, in Owen County, and among his interests was a general store, farming, purchasing and re-handling of tobacco, and stock dealing. From all appearances he was entitled to extensive credit, and he seems to have availed himself of it.

On the night of November 13, 1909, his store-house was destroyed by fire, and soon thereafter attachment proceedings were begun by creditors, other than appellants, against his property, and of a $7,500.00 insurance policy which he carried on the store, these creditors secured by garnishment proceedings between $6,000.00 and $7,000.00. The balance of the insurance money came into the hands of J. W. Calender on the 28th day of February, 1910, and that night Calendar paid the money to his wife. On the next day he negotiated a loan to G. W. Edmonson and Theodore Edmonson over in Grant County for $900.00, and two days following, he negotiated another loan to the same G. W. Edmonson for $1,900.00. The Edmonsons gave the mortgages on their lands in Grant County to secure the payment of these debts, and made them payable to Ida Calender. The Edmonsons and J. W. Calender all testify that Calender in this matter was acting merely as the agent for his wife to whom the money belonged.

The appellants were late in discovering that J. W. Calender was insolvent, or that any of his creditors had coerced him into payment of their debts, and it was not until February following, that they even procured a judgment on their claim against him. Upon hearing the case the lower court adjudged that appellants were not entitled to any relief, and dismissed their petition.

It is admitted by J. W. Calender that all of the money which was loaned to the Edmonsons in the name of his wife, Ida Calender, was his property immediately prior thereto. $500.00 or more of it being proceeds of fire insurance on his store. Some $200.00 of it being proceeds of debts and store accounts due him which he had collected about the same time. The balance of it was his,

and was transferred to his wife in the following manner: J. W. Calender had sold to one Farmer a tract of land, and held Farmer's note for part payment. Farmer sold the land to G. W. Edmonson at or about the date when these mortgages were taken, and Edmonson relieved Farmer of payment of the debt, and assumed it by putting it in one of these notes which they executed payable to Ida Calender, and for payment of which they mortgaged their lands in Grant County. It will thus be seen that until February 28th, and March 1, 1910, all of the money which went into these Edmonson notes belonged to J. W. Calender, and was loaned to parties in Grant County, rather than in Calender's home county, Owen.

The rule is that the burden of proof is upon the creditor to show that the property belongs to the debtor, and that it has been fraudulently transferred to the wife. (Guthrie v. Hill and Wife, 138 Ky., 181; Cogar, &c. v. National Bank of Lancaster, 151 Ky., 470). But when it is shown, as in this case, that the property never did belong to the wife until the transfers and loans referred to, and that at the time the husband was insolvent, it certainly then devolves upon the wife to show that there was a valid consideration for the transfer, and in this it seems to us she has failed. The husband swears that he turned this property over to his wife in payment of a debt, or debts, which he owed to her. He does not attempt to say how many debts there were, or what they amounted to or that they had never been paid. How long they had been in existence, or the occasion for their creation is not explained. The husband swears that the wife had gotten some money from her father and mother, and that he had borrowed it of her. When she got this money, and under what terms, the record does not disclose. The wife testified that her mother gave her $100.00 about seventeen or eighteen years before the time she testified, and that she loaned it to her husband. This is the only tangible or definite testimony she gives in the whole case. If either her father or mother ever gave to her any other money or property, she makes no statement with reference to it, and she is likewise silent as to whether any part of this $100.00 was unpaid.

Upon the whole case it is clear that J. W. Calender was managing his business as he always had except that he did it in the name of, and as agent for his wife. She had no more concern for the way he managed it than

she had manifested in the conduct of his business for long years before, and, on the merits of the case, the only question for consideration it seems to us is, can a man protect his property against the demands of creditors by simply transferring it to his wife, and managing it for her as agent? We think not.

The courts have always scrutinized such transactions closely, and very justly regarded with suspicion the sudden acquisition of property by the wife of an insolvent for the very reason of their community of interests, and because such acquisitions and transactions are too often made to conceal the means of the husband, and withdraw his estate from the reach of his creditors.

Appellee insists that Ida Calender was an incompetent witness *against* her husband, J. W. Calender. But it should be noted here, that J. W. Calender disclaimed any interest in this property, and was therefore not the real party in interest. Under the pleadings a favorable judgment would be for the benefit of the wife. She was not testifying *against* her husband, *but for herself;* that is, her testimony only affected her claim to this property, and since the husband made no claim to it, her testimony could not be against him.

The Edmonsons who were made defendants as garnishees, one of whom was summoned and the other not, claimed to have paid Mrs. Calender before this action was brought; at all events before they had any notice of the object or purpose of the action. The case was badly prepared on this point. On the return of the case the court will ascertain the truth in reference to that matter, and if it is found that they had not paid the debts to Mrs. Calender, the court will direct them to pay into court enough to pay plaintiffs debt and costs provided it finds that they owe that sum, and if not to pay all they owe which shall be credited on plaintiff's debt.

Judgment reversed.

The whole court sitting.