## Ashland Grocery Co. et al. v. Martin et al.

(Decided March 12, 1937.)

STROTHER HYNES for appellants.
JOSEPH M. SPEARS for appellees.

678

—Affirming in part and dismissing in part.

For a long time prior to February 3, 1931, D. M. Martin, Sr., was engaged in the Retail Grocery Business in Catlettsburg, Boyd county, Ky., in connection with which he also conducted a butcher shop. Some 20 years before the transactions here involved he moved the location of his business from one part of the city to another and purchased at the latter site, a small business house, in which was contained his stock of merchandise. On that day (February 3, 1931) he was about 80 years of age and was considerably in debt, which the proof shows was at least equal to or perhaps slightly greater than the total amount of his assets. The major part of his indebtedness was secured by liens upon his real estate—one item of which amounted to about $2,600 upon his store building, and which the proof shows was more than its value. Being desirous of settling his debts before his death, he, on the day specified, sold his stock of merchandise together with his store building to his son, D. M. Martin, Jr., and his grandson, C. W. Martin—the latter being the son of D. M. Martin, Jr.; the consideration being $5,000 for the stock of merchandise and the store building in which the business was operated. It was paid in cash and the grantor and seller (D. M. Martin, Sr.) then paid with the proceeds the mortgage on the store building and a considerable amount of unpaid taxes due upon his property, the bulk of which was against the property sold. He also paid two notes which he had executed to a bank in Catlettsburg with his son and grandson as his sureties, amounting to about $1,400. Some other minor claims were paid and the balance was prorated to his other creditors, which was something like 15 per cent. of their debts.

Among those who received that pro rata were the three plaintiffs and appellants, Ashland Grocery Company, Kitchen-Whitt & Co., and Sehon-Stevens & Co. We will hereafter refer to them as Ashland Company, Kitchen Company, and Sehon Company. Their claims, after crediting them with the pro rata they received, were, respectively, $256.68, $194.44, and $353.31. Some time after the expiration of 12 months following the payment of the pro rata dividends to them they filed actions against D. M. Martin, Sr., in the Boyd circuit

court and recovered judgment against him for the balance of their respective claims, and the Ashland Company and the Sehon Company raised executions on their judgments and levied them on the store building and the lot upon which it stood. The deed that D. M. Martin, Sr., executed to his son and grandson had not been recorded or filed therefor at that time, but it was recorded shortly thereafter.

Almost immediately following the recording of that deed this equity action was filed in the Boyd circuit court by the Ashland Company against the Martins and the other two appellants, and also against some other creditors, and in the petition plaintiff alleged the facts we have recited and charged that the conveyance of the property was actually fraudulent as to the creditors of D. M. Martin, Sr., but, if mistaken in that, it was a fraudulent preference in that it preferred the grantees who were sureties of the grantor to the bank on the notes referred to, and the prayer asked appropriate relief, applicable to whichever state of facts the court found. Later the other two appellants in their pleadings sought the same relief, except the Kitchen Company did not have an execution lien upon the property. The court upon final submission after considerable proof taken denied the relief sought by the appellants, and, complaining of that judgment, they prosecute this appeal.

At the outset it should be stated that the Kitchen Company is in no position to obtain a review of the judgment against it, since its claim is for less than $200, and it is not seeking the enforcement of a statutory lien against the property. See section 950-1 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. Therefore its appeal is dismissed. In the appeal of the other two appellants the enforcement of a statutory lien is involved and their appeals are rightfully here. It is strenuously argued by their counsel—not only that the sale supra of the property by D. M. Martin, Sr., was actually fraudulent, but also that their execution liens should prevail over the rights of the vendees in that sale, because their executions were levied before the recording of the deed of the vendees, and (as they contend) under section 496 of the same statute their rights to appropriate the property are superior to those of the vendees. With reference to the contention that the

sale was actually fraudulent, it should be remembered, first, that the court determined otherwise, and we think the evidence abundantly sustains that finding. The property sold realized, according to the proof, at least $1,000 more than its actual value, and possibly more than that amount. The incentive for the vendees to pay the excess valuation therefor was no doubt largely superinduced by a desire on their part to enable their aged vendor to accomplish his overweaning desire to get out of debt, whereby their contingent liability as his sureties would also be paid.

The vendor, according to the record, entertained the erroneous opinion that the somewhat large amount of his outstanding accounts could be collected—at least to the extent of realizing enough to pay his other indebtedness, including the balance of the amounts held by the respective appellants. Therefore D. M. Martin, Sr., believed at the time that he was solvent, and, had not the financial crisis enveloped the country as it did following 1929, he, perhaps, was correct in that belief. At any rate, counsel for appellants realize the condition of the proof on that issue, which he attempts to sustain only by what he calls "badges of fraud," the chief one being that of the relationship of the parties, but which he admits is not conclusive and may be explained away. However, after exhausting his argument as so supported, he adds, "It is not the purpose of appellants to press the claim that the sale was actually fraudulent." Other expressions in his brief lead unerringly to the conclusion that he has abandoned that contention and which, we repeat, was forced upon him by the proof taken and heard upon the trial of the case.

We also think that counsel is in error in claiming superior liens for two of his clients under section 496, supra, of our statutes. It gives such superior lien to a later one obtained by a creditor "without notice" of the prior lien, unless "such deed or mortgage shall be acknowledged or proved according to law and lodged for record." If, therefore, the creditor obtaining the later lien had knowledge of the prior one (or the prior conveyance), notwithstanding it was not lodged for record, his priority will not prevail against such unrecorded prior one of which he had knowledge. It is testified to by witnesses in this case that the two appellants who obtained and levied their execution on the property

were each of them notified of the conveyance made by D. M. Martin, Sr., to his son and grandson at the time or shortly after the conveyance was made. Appellants acknowledge express notice of the conveyance of the stock of merchandise. Besides, the fact was notorious, and which notoriety was manifested by the further fact that the vendees, or purchasers, of the stock immediately took charge of it, changed the firm name, and commenced dealing with wholesalers, including appellants, in the changed and altered name assumed by the parties conducting the business after the sale. It is shown that the grandson, C. W. Martin—the one who appears to have furnished the $5,000 cash consideration for the property—immediately notified all of the theretofore wholesale sellers to D. M. Martin, Sr. (including appellants), of the trade he and his father had made with his grandfather, and he testified that the notice so given by him embraced the specific one of their having also purchased the real estate (the store building) from his grandfather. Appellants admit receiving notification of the sale of the stock of merchandise, but claim that they "do not remember" any notification given to them of the sale of the store building. Such denial is, to say the least of it, unconvincing, weak, and insufficient to overcome the positive express testimony of C. W. Martin that he did inform appellants of the sale of the store building to himself and his father. The sale, as we have seen, became a notorious fact throughout the vicinity, and which also was followed by the immediate change of possession of the property transferred, including the real estate from D. M. Martin, Sr., to his son and grandson, the purchasers of his stock of merchandise, as well as the building in which the business was conducted. Such facts alone were sufficient to impart notice to appellants that the contested sale had been made, since the slightest inquiry by them would have revealed the fact. We need not encumber the opinion with an inexhaustible list of cases that could be cited to that effect, since the comparatively late one of Stone v. Keith, 218 Ky. 11, 290 S. W. 1042, is sufficient to warrant the applicability of such constructive possessory notice. Other prior ones will be found in that opinion, and later ones to the same effect are Chrisman v. Greer, 239 Ky. 373, 39 S. W. (2d) 676; Sears, Sheriff v. Cain, 242 Ky. 702, 47 S. W. (2d) 513; and Calloway v. Howard, 247 Ky. 730, 57 S. W. (2d) 677.

Counsel for appellants seeks to avoid the fact of the charged notice by his clients of the attacked conveyance by denying in their pleading (a) that any actual notice thereof was ever given, and (b) by contending that the possession taken forming the basis of presumptive notice—as approved and applied in the cases supra—was not sufficient to impart notice to his clients because there was not a sufficient change in the personnel of the possessors as would be calculated to inspire the necessity of inquiry on the part of his clients and from which the true facts could have been ascertained, and counsel cites cases to that effect which say that "the possession must be of such character that it is inconsistent with the continued ownership of the record title holder." Among the cases so cited are Farmer v. R. C. Tway Coal Co., 204 Ky. 356, 264 S. W. 743; Philips v. Hopkins, 208 Ky. 769, 271 S. W. 1075; Larimore v. Perkinson, 208 Ky. 382, 271 S. W. 69. But the facts in them were unlike those appearing in this one. Here, only one of the vendees (D. M. Martin, Jr.) formerly assisted in the operation of the store and who remained in possession of the property after the conveyance. The other one had not done so prior to that event. In addition thereto, the firm name was changed and also appellants had been notified that the new owners of the business had become such, and that the former one had sold the business to them, and had retired. It is manifest to our minds that this case comes within the principle announced in the Stone Case, supra, and the other supporting ones. It is therefore our conclusion that the court did not err in denying plaintiff's priority over the deed executed to the vendees because of their execution liens.

But it is strenuously insisted that the attacked transaction constituted a preference under section 1910 of our statutes, supra. The remedy therein provided for is created when a debtor "in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others" conveys or incumbers his property so as to prefer one creditor or set of creditors over the others. However, section 1911 of the same statute expressly prescribes that the remedy given shall be employed by the complaining unpreferred creditor "within six months after the mortgage or transfer is legally lodged for

record, or the delivery of the property or effects transferred.'' The actions in this case were not filed, as we have seen, until more than 12 months after the alleged fraudulent preference was made. Counsel for appellants seeks to avoid the effect of such delay by contending that the deed evidencing the sale of the property was not lodged for record at the time his clients proceeded under the statute. But the conveyed property had been delivered for more than 6 months prior to the attacks made by appellants. But it is contended by counsel for appellants that such delivery of possession of real estate conveyed did not have the effect to start the limitation to running, since he argues that ''the delivery of the property or effects transferred'' as contained in the statute applies only to personal property and not to real estate. As a consequence of such reasoning, he then contends that the bar to the right of his clients as to the transferred realty in this case began to run only when the deed conveying it was lodged for record, and when in this instance it was recorded.

Counsel admits that this court in a number of cases appears to have held or broadly intimated, to the contrary, and especially so in the case of Cogar v. Stewart, 78 Ky. 59. But he insists that such holding in that case was dictum; but we will devote no time to determining whether or not the insistence is correct, since the interpretation given in the dictum, if it be such, is in accordance with our interpretation of the language contained in section 1911, supra, of our statutes and in which the bar of six months is enacted. If the taking of possession in this case was sufficient to fasten notice upon appellants so as to deprive them of a superior lien by virtue of their execution (which we have determined was true), it should also be sufficient to give them notice of the preferential conveyance of all of the property transferred by delivery and to start the running of the statute against them—and which was the purpose intended by the language contained in section 1911; i. e., notice by filing of the conveying instrument for record, or by taking possession of the property transferred. The latter, as we have seen, was done simultaneously with the conveyance.

In addition to all of the foregoing, the entire transaction here complained of was open and entirely free of secretiveness. It therefore possessed none of

the elements of an intent to perpetuate a fraud. The question of the insolvency of the grantor is, to say the least of it, in doubt. The plaintiffs participated in the distribution of the proceeds of the sale without complaint, and suffered and permitted the status thereby produced to continue for more than 12 months without complaint. They saw and knew of the change in possession, as well as the change in ownership of the business, and in the circumstances it would be most inequitable and unjust for them to disturb that status in which they had so acquiesced with knowledge of the narrated facts. The record fails to develop any legal reason for judicial interference, and because of which we conclude the court did not err in rendering the judgment appealed from.

Wherefore, for the reasons stated, it is affirmed as to the appellants Ashland Company and Sehon Company, but the appeal as to the Kitchen Company is dismissed.