# Liberty Bank & Trust Co. et al. v. Davis et al.

Dec. 15, 1939.

Eugene Mosley, Jr., for appellant.

Malcolm Crawford for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

In this opinion appellants, Liberty Bank & Trust

Company and Liberty Fire Insurance Company, will be referred to respectively as the Bank and as the Insurance Company. The appellants, plaintiffs below, instituted this action to recover personal judgment against Henry Davis on a note he executed to the Bank for $1,000, and on a note he executed the Insurance Company for $9,000, the latter being secured by 200 shares of the capital stock of the Bank pledged as collateral. Appellants further sought in this action to set aside two deeds that Davis had executed to his wife, averring they were not supported by any valuable consideration. Davis filed no answer but Mrs. Davis answered traversing the allegations of the petition.

After proof was taken the case was submitted to the chancellor who rendered personal judgment against Davis on the notes, directed the collateral sold which secured the $9,000 note, but dismissed the petition insofar as it sought to set aside the conveyances Davis had executed to his wife. This appeal is prosecuted from that part of the judgment which refused to set aside the conveyances, and appellants seek a reversal on the ground that the relation of husband and wife, accompanied with badges of fraud, shifts the burden upon Mrs. Davis to establish the bona fides of the transactions and that these conveyances were executed to her for a valuable consideration, which burden appellants claim she failed to meet.

No question is raised on this appeal as to whether there was a misjoinder of parties. Therefore, it will not be discussed in the opinion.

Appellees agree appellants are correct in their contention that the marital relation existing between Davis and his wife and the suspicious circumstances surrounding this transaction are sufficient to place the burden on Mrs. Davis to prove the conveyances were supported by a valuable consideration, and to prove the bona fides of the transactions. Magic City Coal & Feed Company v. Lewis, 164 Ky. 454, 175 S. W. 992; Stix v. Calender, 155 Ky. 806, 160 S. W. 514; Dance v. Zumalt, 279 Ky. 41, 129 S. W. (2d) 989. Thus it becomes necessary to review the evidence, and we will bear in mind the law closely scrutinizes a conveyance between husband and wife. Stix v. Calender, supra; Farmers' Bank of Fountain Run v. Hagan, 242 Ky. 535, 46 S. W. (2d) 1084.

Mrs. Davis' parents were wealthy and her father at

his death in 1921 devised her $25,000. Some years later Mrs. Davis' mother entertained her children at dinner and on that occasion she gave each child $20,000. Mrs. Davis testified that on another occasion her mother made her a gift of $12,000 and followed this with two gifts of $6,000 each. The uncontradicted testimony of Mrs. Davis is that she received from her parents an aggregate of $69,000, all of which she turned over to her husband to invest for her. Davis was engaged in the real estate business in Louisville and invested his wife's money in property, taking the title in the name of his firm, Myer-Davis Realty Company, and a later firm of Henry Davis Realty Company, which latter firm conveyed the property to Henry Davis in 1925, in whose name the title remained until 1931, when Davis conveyed it to his wife.

Appellants contend Mrs. Davis' testimony is suspicious because she did not support it by other members of her family and by Myers, a former partner of her husband; because she could not remember the dates of the last gifts made her by her mother; because she turned this money over to her husband without depositing it in a bank. It is not denied that her parents were wealthy. She testified she received the rents from, and paid the taxes on, this real estate, giving the name of the agent who had charge of the rentals, and it would have been an easy matter for appellants to have contradicted Mrs. Davis had her testimony been incorrect. It is not necessary for us to accept Mrs. Davis' statement that she turned this money over to her husband as her trustee, because whether he acted in that capacity is a legal question concerning which Mrs. Davis, perhaps, was not qualified to testify. But the record convinces us, as it did the chancellor, that she did receive these large sums from her parents and that she did turn them over to her husband who became indebted to her for them; and we will presently see that this indebtedness was sufficient consideration to support the deeds Davis made his wife.

Davis had been a successful business man and had borrowed considerable sums from the Bank which he secured with collateral. The $1,000 note sued on was a remnant of a $5,050 note he executed to the Bank on May 8, 1930, upon which he made payments at times of renewal until it had been reduced to $1,000 on the last renewal on September 5, 1932. The $9,000 note the insur-

ance company sued on was a remnant of a $13,025 note Davis executed to the Bank January 27, 1929, and was secured by 200 shares of the capital stock of the Bank. Although the Bank and Insurance Company were separate and distinct corporations, John E. Huhn, was president of both institutions during the time of the Davis transactions. The financial crash in the fall of 1929 greatly reduced the value of stocks and securities, and Huhn became dissatisfied with the collateral behind the Davis loans which caused him to write Mrs. Davis requesting her to further secure her husband's notes with her individual property. This both angered and alarmed Mrs. Davis, who then demanded of her husband that he convey to her the real estate she claimed to own, the title to which stood in his name. This he did by deeds dated January 28th, and February 10th, 1931, which were promptly recorded after their execution.

Huhn had knowledge of the transfer of this real estate from Davis to his wife and wrote Mrs. Davis on February 10th, 1931, suggesting that she mortgage it to the Bank to secure her husband's indebtedness. This she refused to do. Since the $9,000 note was secured by 200 shares of the Bank's stock, Huhn wanted to get it out of his Bank to avoid criticism by the bank examiners. As president of the Bank, he instructed Fred Diehl, vice-president of the Insurance Company, to take a note from Davis for $9,000 on March 18, 1931, and to use the proceeds thereof to pay the $9,000 note which Davis owed the Bank. Being president of both the Bank and the Insurance Company, Huhn's instructions were carried out by Diehl. Upon the Bank being paid the $9,000, it transferred to the Insurance Company the 200 shares of the Bank's stock which Davis had pledged with the Bank as collateral to secure his $9,000 note. While a renewal of a note does not satisfy the debt, but merely changes the evidence of it, Lowry v. Fisher, 65 Ky. 70, 2 Bush 70, 92 Am. Dec. 475; Crooke v. Hume's Ex'x, 139 Ky. 834, 109 S. W. 364, 33 Ky. Law Rep. 162, yet, the execution by Davis of this $9,000 note to the Insurance Company on March 18, 1931, was not a renewal of the note to the Bank, but was an entirely new and independent transaction whereby Davis borrowed money from the Insurance Company with which the Bank's $9,000 debt was satisfied.

The only ground alleged in the petition for setting aside these conveyances was that they were voluntary

and unsupported by a valuable consideration. Such an allegation placed the action under Section 1907, Kentucky Statutes, which section does not apply to conveyances executed by a debtor prior to the creation of the debt sued on. Hackney Company v. Noe, Noe v. Hackney, 146 Ky. 818, 143 S. W. 418; Cornett v. Brashear, 225 Ky. 529, 9 S. W. (2d) 302.

We now turn to the $1,000 note. As just stated above, this action was instituted under Section 1907 and an examination of Sections 1906, 1907 and 1910, Kentucky Statutes, fortifies that statement. Appellants' petition alleges the deeds were not based upon a valuable consideration and while they allege this amounted to a fraud upon them, they fail to aver any facts in their pleadings showing actual fraud on the part of Davis and that Mrs. Davis accepted the deeds with knowledge of such fraud. Such allegations are necessary to maintain an action under Section 1906. Nor do plaintiffs allege Davis was insolvent at the time he executed the deeds, or that he executed them in contemplation of insolvency with intent to prefer one creditor over another, as is required to maintain an action under Section 1910. Therefore, it is seen appellants' petition stated a cause of action under Section 1907. Grand Lodge of Kentucky v. First National Bank of Kentucky, 251 Ky. 189, 64 S. W. (2d) 474, and authorities cited therein.

Although the petition alleged the deeds were not supported by a valuable consideration, the evidence clearly shows the consideration for the conveyances was the debt of some $60,000 which Davis owed his wife. A pre-existing debt is a sufficient consideration to uphold a conveyance from a debtor to his creditor, and a deed executed in payment of such debt will not be set aside if the amount of the debt is not materially less than the fair and reasonable value of the property conveyed. 27 C. J. 534, Section 277; Farmers' Bank of Fountain Run v. Hagan, 242 Ky. 535, 46 S. W. (2d) 1084. Here there was no evidence that the value of the property conveyed Mrs. Davis by her husband was in excess of his indebtedness to her. We agree with the chancellor, as expressed in his written opinion, that this record shows these deeds were not made without a valuable consideration, but that they were executed by Davis to his wife in payment of a pre-existing debt. However, Davis did prefer his wife over his other creditors by conveying

this real estate to her, but to successfully attack a conveyance on the ground of preference, the action must be instituted within six months from the date the conveyance was recorded, Section 1911, Kentucky Statutes; Cogar v. Stewart, 78 Ky. 59; Ashland Grocery Company v. Martin, 267 Ky. 677, 103 S. W. (2d) 72. Here the conveyances were recorded in February and in June, 1931, and this action was not instituted until June, 1933. Thus, plaintiffs were barred from instituting action under Section 1910, which may account for it having been brought under Section 1907.

Appellants cite many authorities where this court has set aside conveyances on account of fraud but none of them are applicable here. We agree with the chancellor that these deeds were supported by a valuable consideration.

Judgment affirmed.