John W. MERCER, Appellant,

v.

**PEOPLES FIRST NATIONAL BANK & TRUST COMPANY, as Administrator with the Will Annexed of the Estate of Jess G. Mercer, Deceased, and Peoples First National Bank & Trust Company, as Administrator with the Will Annexed of the Estate of Walter E. Mercer, Deceased, Appellees.**

Court of Appeals of Kentucky.

June 1, 1973.

As Modified Sept. 14, 1973.

Francis T. Goheen, Goheen, Schultz & Yaffe, Paducah, for appellant.

William E. Scent, Reed, Scent & Walton, Henry O. Whitlow, Waller, Threlkeld & Whitlow, Paducah, for appellees.

GARDNER, Commissioner.

In 1944 appellant, John W. Mercer, entered into an oral contract with his brother, Walter, whereby John was to work in Walter's service station and each would receive one-half of the profits. The parties treated the arrangement as a partnership. John worked in the service station until Walter's death in 1970 but received no share of the profits. A few weeks before his death Walter made a promissory note to John for $95,000 which carried the notation at the bottom: "Profit Sharing unpaid—From—June—1944 to date."

In his complaint as amended John alleged that from time to time, beginning in 1960, Walter purchased real estate and stocks and had them placed in the names of Walter Mercer and Jess Mercer, his wife, as tenants by the entireties or jointly with the right of survivorship; that he spent so much money for these properties that his estate was insolvent and the

note uncollectible. (The action was brought against Jess Mercer and the administrator of the estate of Walter E. Mercer. Upon the death of Jess Mercer the action was revived against her administrator.) John asked that Walter's administrator be required to make an accounting of the profits and that John be adjudged a lien on the properties. He relied on KRS 378.020 which provides:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge."

On the administrators' motion the circuit court dismissed (on the ground that it failed to state a claim) so much of the complaint as sought to have a lien impressed on the properties transferred prior to March 1, 1970, the date of the note.[1]

The main issue is whether the execution and acceptance of the note prevented John's reliance on KRS 378.020. The administrators insist that it did. They argue that the note was a novation and since the statute applies only to "existing creditors," John could claim a lien only as to properties transferred after the acceptance of the note.

Of the authorities cited by both parties, or we have found in our own research, the one closest to answering the question is Lowry v. Fisher, 65 Ky. (2 Bush) 70 (1867), which was concerned with the same statute. There it is written: "Conceding the general principle that the execution of a new note or promise to pay discharges the obligation of the old one, yet there are rights often arising out of the original transaction which adhere to the consideration and are not extinguished by the renewal, as the lien of a vendor, which is not impaired by the renewal of a note for purchase money. (Honore's ex'or vs. Bakewell, 6 B.M. [67], 72.) The renewal of a note is not a satisfaction of the debt —it is only a change of the evidence of the debt; and in this case, in our opinion, such renewal did not destroy the rights which the statute secured to the appellees as creditors of James H. Lowry, prior to his conveyance to the appellant." There is persuasive language in James v. Stokes, 203 Ky. 127, 261 S.W. 868, 877 (1924), where it is found: "But it is insisted on this branch of the case that plaintiff is not entitled to attack the conveyance because his notes were executed after it was made and that his rights are to be governed by those possessed by a subsequent creditor. In the first place, we have already seen that Stokes was obligated for the debt from the time the leases were transferred, and the notes subsequently executed was but a change in evidence of that debt." It is said in 37 Am.Jur.2d, Fraudulent Conveyances, § 137: "One who bases his claim on a note which has been renewed takes his standing as an existing or subsequent creditor from the date of the original note, and not from the date of the renewal; and if a note is given merely as security for an indebtedness previously existing, the creditor's standing is determined as of the time when the original debt was contracted."

It is our conclusion that the execution and acceptance of the note did not destroy such status as John may have had as an existing creditor at the times when the various properties were transferred. Accordingly, the complaint does state a claim for some relief. (Since no responsive pleading has yet been called for, any question of possible defenses to the claim is not before us.)

■ In their counterclaim the administrators alleged that John, as a partner, was

---

1. There is no allegation of fraud on the part of Walter or his wife so KRS 378.010 (which authorizes subsequent creditors to have fraudulent transfers set aside) is not applicable.

liable for one-half of the partnership indebtedness and asked that they recover from John a sum equal to one-half of the partnership indebtedness. They stated that a description of the debts would be supplied by amendment. John moved that the counterclaim be dismissed because it did not state a claim against him, and suggested that the proceeding for the determination of the rights and liabilities between the parties should be through an accounting.

We believe it would have been better if the administrators had asked for an accounting, but under a liberal construction of the civil rules we believe the counterclaim stated a claim for relief.

The judgment is affirmed in its overruling the motion to dismiss the counterclaim and reversed in its sustaining the motion to dismiss the complaint as amended.

PALMORE, C. J., and MILLIKEN, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.