Marshall, &c., vs. Marshall, &c.

CASE 88—PETITION EQUITY—NOVEMBER 22.

## Marshall, &c., vs. Marshall, &c.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. Where property is purchased by a debtor in the name of a third person, to whom the conveyance is immediately and originally taken, the case is not within the statute against fraudulent conveyances. (*Crozier, &c., vs. Young, &c.,* 3 *Mon.,* 157; *Roberts on Fraudulent Conveyances,* 463.)

2. Lands purchased by, or with the separate funds of, the wife, acquired by her own skill and industry, and conveyed directly to her, cannot be subjected to the payment of her husband's debts.

G. W. KAVANAUGH and A. BARNETT,      For Appellants,
CITED—

4 *Mon.,* 157; *Crozier vs. Young.*
1 *Dana,* 531; *Doyle, &c., vs. Sleeper, &c.*
2 *Metcalfe,* 206; *Todd vs. Hartley.*
5 *J. J. M.,* 554; *Lyne vs. Bank of Ky.*
*Act of* 1796.
*Civil Code, sec.* 474.

HARLAN & HARLAN and J. A. SPENCER,      For Appellees,
CITED—

1 *American Leading Cases, pp.* 67 *to* 73.
4 *Wash.,* 129, 137.
1 *Robinson (Va.),* 125.
23 *Maine,* 22.
2 *Bland,* 26, 34.
1 *Stant. Rev. Stat.,* 546.
2 *Rev. Stat.,* 230.
4 *Metcalfe,* 143.
3 *Dana,* 231; *Duncan vs. Forsythe.*

7 *J. J. M.*, 525; *White vs. Graves.*

2 *B. Mon.*, 346–7; *Lewis vs. Love's heirs.*

5 *J. J. M.*, 555.

8 *Dana*, 263.

2 *Bibb*, 204.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

This equitable action was instituted on the 11th of April, 1862, by appellees against appellants, to subject three adjoining parcels of land in Green county, to which appellant, Martha A. Marshall, held the legal title, and certain personal estate, to the payment of specified debts, for which appellees allege they were respectively bound as the sureties of appellant, William B. Marshall, and which they feared they would be compelled to pay, as said appellant had no visible estate held in his own right, or not enough to pay said debts; and Beverly Marshall, who was jointly bound with them as his surety, was greatly embarrassed, if not insolvent.

They allege that said W. B. Marshall furnished the money to pay for said parcels of land and some slaves, and fraudulently procured the titles to them to be made to his wife, to protect them from the payment of his debts, and to secure the use and enjoyment thereof to himself.

Marshall and wife filed separate answers, in which they deny all fraud; allege that the property conveyed to Mrs. Marshall was paid for with means which she held in her own right; that no part thereof was furnished by W. B. Marshall; and controvert the right of appellees to the relief sought in the petition.

The debts for which appellees were bound as the surety of W. B. Marshall were different and distinct. Those for which Robert Marshall was bound, as appears from

a schedule attached to the petition, amounted, in the aggregate, exclusive of interest, to the sum of $4,300 85; and those for which Penick was bound, as appears from a list presented by him, amounted, in the aggregate, exclusive of interest, to the sum of $1,300. Of those for which Marshall was bound, one was to Burr Hazel for $1,000 principal; and of those for which Penick was bound, was one to S. E. Hutcheson for $1,000 principal.

By an amended petition, appellees alleged they had been coerced, by executions, to pay the several debts for which they were bound, and prayed for judgments for the respective amounts thereof, and a sale of the property specified in their original petition to satisfy the same.

On final hearing, the court below rendered judgment in favor of R. Marshall for $584 92½, with interest from the 10th of February, 1863, till paid, and costs—that being the one half of the Burr Hazel debt paid by him as the surety of W. B. Marshall—and adjudged that the other demands set up by him had been paid; and in favor of Penick for $475 47, with interest from the 22d of March, 1864, until paid, and his costs—" being, as the judgment recites, the one half of the remaining balance on the Sarah Hutcheson claim, which had been paid by said Penick as joint surety with said William for B. Marshall, which sum of $475 47 is found to be due said Penick after deducting the *amount* paid on said claim by B. Marshall of $269 06;" and his petition, so far as he sought indemnity on account of the debt of $300 to the bank, was dismissed. And it was further adjudged by said court, that the two parcels of land, one called the Bibb tract, and the other being twenty-three acres taken off of B. Marshall's tract, and both conveyed to Martha A. Marshall by Beverly Marshall and wife, on the 12th of March,

VOL. II—27

1859, were purchased by, and paid for with the means of, William B. Marshall, "*in whole or in part, and not the separate means of said Martha A. Marshall,*" and should therefore be subjected to the payment of said sums adjudged to appellees, and ordered a sale of thirteen sheep, a clock, the half of a gray colt, a *piano-forte*, and so much of said land as should be required to pay the same.   Which judgment Marshall and wife seek by this appeal to reverse.

In the fall of 1855 appellant, W. B. Marshall, drove a lot of stock to the southern market, the cost of which is not shown, nor the number; but from the facts in the record, we are authorized to infer that he bought the stock on credit.   Before his return he purchased another lot of one Sinclair, at the price of two thousand eight hundred and eighty dollars, on a credit of ninety days, and gave' his draft on H. M. Robinson, in New Orleans, for the price, which was protested for non-payment.   It is alleged in the petition that he realized large profits on each of said lots of stock.   In his answer he denies that he made *large profits;* but he virtually admits that some profits were realized; the amounts, however, he does not state, nor are they otherwise shown.

Nor does it appear that he applied the money for which he sold said stock, or any part of it, to the payment of his debts, which were numerous and for large amounts.

On the 11th of April, 1856, he conveyed—what he declared in the deed to be all—his property, except such as was by law exempt from execution, consisting of lands, slaves, stock, farming utensils, and furniture, to appellee, Robert Marshall, in trust, to be sold, and the proceeds to be applied to the payment of debts which he owed, and for which his father, Beverly Marshall, and his father-in-law, S. W. Robinson, were bound as his sureties.   The trust was accepted by said R. Marshall, and

we must presume that he executed it faithfully and satisfactorily to the parties interested, as we hear no complaints against him on that account.   The property thus conveyed was insufficient to pay the debts enumerated in the deed.

Appellants, on the 6th of September, 1856, united in a deed making A. Barnett, Esq., trustee for Mrs. Marshall, and conveyed to him in trust for her separate use money and notes, amounting then to nine hundred and thirty-five dollars; and provided that such other sums of money as said Martha might thereafter become the owner of, in her own right, might be placed in said trustee's hands to be held upon the same trusts and for like purposes as the nine hundred and thirty-five dollars then on hand were to be held.

On the 5th of November, 1857, Henry Bibb and wife conveyed to Beverly Marshall the tract called the Bibb place, containing about one hundred and twenty-five acres, in consideration of eleven hundred and twenty-five dollars in hand paid ; and on the 12th of March, 1859, Beverly Marshall and wife conveyed the Bibb tract, with a smaller tract adjoining thereto, containing abcut twenty-three acres, to appellant, Martha A. Marshall, for the consideration, as recited in the deed, of fifteen hundred and eighty-five dollars in cash notes, drawn from the hands of A. Barnett, her trustee, and cash received from her, making up the whole consideration, the receipt of which is acknowledged by the grantors.   And on the 2d of November, 1860, appellee Penick, and wife, in consideration of six hundred and eighty-five dollars cash in hand paid, conveyed to Mrs. M. A. Marshall the third tract, containing thirty-four and one quarter acres, with covenant of general warranty.

The evidence conduces strongly to the conclusion that Mrs. Marshall had acquired the money and notes placed

in the hands of A. Barnett in the manner stated in the deed, and independent of her husband. These means she had the power, under said deed, if she chose to do so, to apply to the payment for said lands; besides, Wood, who had charge of the school in Greensburg, proves that he employed her in his school in 1856 as a teacher of music, and continued to employ her in that capacity for three years, during which time she made by her services in his school nine hundred or one thousand dollars, all of which he paid her except about thirty-five dollars; and during the same period she gave music lessons to persons not connected with his school, whereby she must have realized from four hundred dollars to six or seven hundred dollars in addition to what he paid her. He also proved that she was "uncommonly energetic and attentive to her business, and seemed to be very economical."

These means acquired by her own skill and industry, with those mentioned in the deed to Barnett, are more than sufficient to pay for all the lands conveyed to her at the prices which were paid for them, and it is not intimated that they were not the full value of said lands.

But this branch of the case would be left unfinished without referring to the attitude and conduct of appellees. Some, if not all, the deeds under which appellant, M. A. Marshall, claims the property named in the petition, were written by appellee Marshall; all of them were acknowledged by the grantors before him as the clerk of the Green county court, and recorded in his office. He was the relation, trustee, and confidential friend of her husband. He sold or traded to her the slave Martha, who was one of the trust slaves, received the consideration agreed upon from her, without questioning her power to make the contract or asserting any claim for the bene-

Marshall, &c., vs. Marshall, &c.

ficiaries under the deed to the consideration paid for said trust slave; and when, on the 21st of December, 1860, after all of said conveyances had been made to Mrs. Marshall, he was about to sign the note to B. Hazel as the surety of her husband, he took her obligation to indemnify him.

Appellee Penick was the brother-in-law of appellant, W. B. Marshall, his neighbor, and doubtless knew his pecuniary condition, and regarded him as insolvent; for when the note was executed to Mrs. Hutcheson he refused to sign it as the surety of said appellant, but did sign it as the surety of Beverly Marshall; sold land to appellant, M. A. Marshall; received the price from her, and conveyed the same to her with warranty; so that appellees, by their dealings and business transactions with her, recognized her right to the estate claimed and controlled by her as honestly acquired and properly held. But if it be conceded that W. B. Marshall furnished the money with which said lands were paid for, does it follow that appellees have a right to subject them to the payment of their demands?

In *Crozier, &c., vs. Young, &c.* (3 *Mon.*, 157), it was held by this court, that where property is purchased by a debtor in the name of a third person, to whom the conveyance is immediately and originally taken, the case is not within the statute against fraudulent conveyances; and such was the ruling of the British courts under their statute, which was similar to ours. See *Cro. Car.*, 550; *Roberts on Fraud. Conveyances*, 463, cited in the case *supra*. And in that case Crozier, the debtor, had invested money in bank stock, and took the certificates in the name of his children, which stock his creditors sought to subject to the payment of their debts; and the court said: "The money, indeed, which was paid on the sub-

scription for the stock, was his; but it is not the money paid on the subscription which is sought by his creditors to be made subject to the payment of his debts; nor could the money so paid, if such had been their object, be made liable to his debts, not only because money has, in the language of the English courts, no ear-marks by which it can be distingushed, but because the money paid for the stock has passed into the hands of the stockholders, who acquired it in good faith, and cannot, therefore, be deprived of it rightfully but by their consent; but it is the stock, and not the money paid for the stock, which the creditors in this case are pursuing; and the stock never was his, and never was conveyed to him by his children."

Assuming this to be correct, it is obvious the statute against fraudulent conveyances cannot, by any legal construction, be made to apply to the case; for that statute only embraces alienations or conveyances made by debtors in fraud of their creditors; and the effect of the statute is, by declaring such alienations or conveyances void as to creditors, to reinvest the thing aliened or conveyed in the debtor, and thus subject it to the payment of his debts in the same manner as if there had been no alienation or conveyance by him.

The *Revised Statutes* made no material change in the *act of* 1796 to prevent fraudulent conveyances, except that, by the provisions of the *Revised Statutes*, the fraudulent conveyance is declared void as to the debtor's liabilities at the time of the conveyance, but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted, or as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to be void as to prior creditors, it shall not therefore be decreed to be

void as to such subsequent creditors or purchasers; so that the construction given to the former statute on this point in the case *supra* applies also to the present statute.

It is perfectly certain, from the exhibit filed by appellee, Marshall, that the debt to B. Hazel was created after the conveyances were all executed to Mrs. Marshall; and as the judgment in his favor is for the residue of that debt which he failed to make out of the property of W. B. and B. Marshall, his judgment cannot be sustained either upon the principles of the common law or under the statute.

As to the judgment of Penick, which adjudges to him the unpaid balance of the debt to Mrs. Hutcheson, he, it is true, alleges that said debt was created in February, 1859, before the date of B. Marshall's deed to Mrs. M. A. Marshall; but she, in her answer, denies any personal knowledge on the subject, or information sufficient to form a belief in relation thereto. The note upon which the suit was brought bears date in July, 1860, and the witness, Cleft, who proves he sold the slave for Mrs. Hutcheson to Marshall, does not fix the time of the sale, nor does any witness prove the sale was anterior to the date of said last named deed, and of course, with the denial in the answer, and in the absence of proof, he is in the same condition in regard to the land conveyed by B. Marshall that his co-appellee, R. Marshall, is; and as to the land conveyed by himself, he is estopped by his warranty.

Wherefore, the judgment is *reversed.*