8b 533
90 104
8bu 533
e127 243

CASE 20—PETITION EQUITY—JANUARY 23.

# Stokes & Son, &c. v. Coffey, &c.

### APPEAL FROM MARION CIRCUIT COURT.

1. INSURANCE OF HIS LIFE BY AN INSOLVENT DEBTOR FOR THE BENEFIT OF HIS WIFE, so as to make an unreasonable provision for her, is held to be fraudulent as to antecedent creditors.

2. An insolvent debtor holding a life-policy for ten thousand dollars, payable to his representatives, procured it to be canceled, and another policy issued in its stead, payable to his wife. This was a voluntary gift or assignment of a portion of the husband's estate, and was void as to antecedent creditors. (Revised Statutes, sec. 2, chap. 40; 50 Penn. 75; 1 Bigelow's Insurance Reports, 672.)

3. An insolvent debtor insured his life for the benefit of his brother, to secure the payment of certain indebtedness to him, and also to indemnify him as surety on debts due certain other creditors. The debts due to the brother and the debts upon which he was surety should be satisfied out of the proceeds of the policy, and the balance of such proceeds should be treated as assets of the insolvent debtor's estate.

   The insurance for the benefit of the brother as above had the effect of preferring him to other creditors. Such a preference is not actually fraudulent.

4. A voluntary post-nuptial settlement upon the wife, in which an unreasonable provision is attempted to be made for her by her insolvent husband, by using his own means in procuring life-policies for her benefit, can not be upheld.

   The court would not be understood as intimating that an insolvent debtor may not insure his life for the benefit of his wife when she has no considerable estate of her own. But the amount of the policy ought to be no more than will be sufficient to enable her, in the event of his death, by the exercise of proper prudence and economy, to support herself and family, and to afford to them the opportunity of securing reasonable education.

5. An insolvent debtor, by the use of his own means, obtained insurance policies upon his life for the benefit of his wife. The proceeds realized by the wife on such policies after the death of her husband are subjected in this case to the payment of his antecedent debts.

6. *But as to one policy for the benefit of the wife, she denied that the premium for it was paid out of her husband's means.*—As the creditors of the husband did not prove the payment of the premium on this policy out of the husband's means, she is permitted to retain the proceeds realized by her upon it, although she did not offer any rational explanation as to what funds were applied to the payment of this premium.

ROUNTREE & FOGLE, . . . . . . . . For Appellants,

CITED

5 J. J. Marsh. 550, Lyne, &c. v. Bank of Ky.
3 Monroe, 158, Crozier v. Young.
4 Monroe, 581, Halbert v. Grant.
1 Dana, 532, Doyle v. Sleeper, &c.
Revised Statutes, 1 Stanton, 546.

HARRISON, . . . ⎫
RUSSELL & AVRITT, ⎭ . . . . . . . . . For Appellees,

CITED

15 B. Mon. 80, Robinson v. Huffman and wife.
Act of 1868, sec. 7, 2 Session Acts, 1867–68.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

B. S. Coffey, a few months before his death, insured his life for the sum of ten thousand dollars in the Kentucky Southern Mutual Life Insurance Company; also for the further sum of five thousand dollars in the St. Louis Mutual Life Insurance Company. The policies were made payable to his wife, Mrs. Elizabeth Coffey. He had previously taken out a life-policy for ten thousand dollars in the latter company, payable to his representatives. This policy he procured to be canceled, and another issued in its stead, payable to his wife. About the same time he procured another life-policy for the further sum of ten thousand dollars, which he caused to be made payable to his brother, Joseph Coffey. At the time this insurance was procured and the premiums thereon paid Coffey was greatly indebted, in fact was upon the verge of bankruptcy.

After his death his wife and brother compromised with

the insurance companies, Mrs. Coffey receiving one half of the amounts of the policies made payable to her, and Joseph three thousand dollars on the policy payable to him.

Coffey's administrator instituted this suit to settle his estate in insolvency. The appellants, who were creditors of the intestate, made their joint answer a cross-petition against the widow and brother in whose favor his life had been insured, and asked to subject the amount received by them on account of such insurance to the payment of their claims. They alleged that the premiums were paid by Coffey out of his own means; that the provision attempted to be made for his wife was unreasonable in view of his insolvency and indebtedness; that the policy made payable to the brother was a mere gratuity; and that the application of funds which ought to have been paid upon their debts to such purposes was fraudulent as to them, they being antecedent creditors.

The appellees do not controvert the insolvency of Coffey at the time he procured the insurance, but deny all fraud in the transaction. Joseph claims that the policy in his favor was intended to secure the payment to him of certain indebtedness due from his brother, and to indemnify him as surety on debts due to certain of his other creditors. Mrs. Coffey denies, in general terms, that the premium on the ten thousand dollar policy in the Kentucky Southern Mutual Company was paid by her husband out of his means, but she offers no rational explanation as to the source from which it was paid.

The circuit court upon hearing this branch of the cause adjudged that Mrs. Coffey should account for the amount of the premiums paid on the policies in her favor, and should be allowed to retain the money collected from the insurance companies as her own; that the debts due to Joseph, and the debts upon which he was surety, should be satisfied out of the money collected by him, and the balance treated as assets of his brother's estate. From this judgment the

creditors have appealed, and Mrs. Coffey and Joseph prosecute a cross-appeal.

From the pleadings and evidence it may safely be assumed that the premiums upon all the policies (except that taken out in the Kentucky Southern Mutual Company) were paid by the intestate out of his own means; and that the amount secured by these policies to Mrs. Coffey was intended to be, and was in law, a voluntary post-nuptial settlement. The change of the policy originally made payable to the husband's representatives, so as to vest the title thereto in the wife, was a voluntary gift or assignment of a portion of the husand's estate, and was void as to his antecedent creditors. (Revised Statutes, section 2, chapter 40; appeal of Elliott's executors, 50 Penn. 75; 1 Bigelow's Insurance Reports, page 672.) In failing so to adjudge the circuit court clearly erred.

The rights of Mrs. Coffey under the two policies originally made payable to her can not so easily be determined. The insurance was had and the intestate Coffey died in 1868, nearly two years before the passage of the act for the incorporation and regulation of life-insurance companies, approved March 12, 1870; hence the rights of the parties to this litigation are not affected by the provisions of that act.

These two policies were never held or owned by the husband. The wife did not receive them from him by conveyance, assignment, or transfer. The husband's creditors therefore can not reach the amounts realized on them, under the provisions of our statute declaring voluntary assignments, etc., void as to antecedent creditors, nor indeed under any statutory enactment. One of these policies was, however, purchased by the debtor with his own means, and to the extent of the amount paid for it his estate was disabled from paying his debts, and his creditors were injured.

In the case of Partridge v. Gopp it was held "that no man has such a power over his property as that he can dispose

of it so as to defeat his creditors, unless for consideration."
(Kent.)   This doctrine is perhaps broader and more compre-
hensive than is warranted by any adjudication ever made by
this court.   Yet voluntary dispositions by a debtor of his
estate, whether it is such as can be reached by execution or
other legal process or not, is by the common law fraudulent
as to existing creditors, unless such dispositions be in the way
of reasonable and proper advancements to his children, or a
settlement upon his wife which a clear sense of moral duty
requires him to make.   Such advancements or settlements, to
be upheld against antecedent creditors, must be characterized by
the utmost good faith.   The motives of the father or husband
must be pure, and in carrying out a design tolerated by the
liberality of the law rather than justified by strict morality
he must carefully abstain from any act tending to show a want
of due regard for the rights of his creditors.   In the case
of Doyle v. Sleeper, &c. (1 Dana, 532), where the insolvent
father purchased and paid for real estate with his own money,
and caused the title to be conveyed to his children, Chief
Justice Robertson says that "indulgent as the spirit of the
common law certainly is to the claims and obligations incident
to the filial relation, it will not permit it to be prostituted or
perverted as an instrument of fraud."   The purchase was
held not to be an advancement to the purchaser's children,
but an attempted fraud upon his creditors, and the court sub-
jected the property to the payment of their debts.   Judge
Underwood, in his separate opinion, takes even broader grounds
than the Chief Justice, holding "it to be a fraud for the debtor
after contracting the debt to disable himself, so that he can
not pay it, by disposing of his money or property which the
law subjects to the payment of his debts in such manner that
it can not be reached by the ordinary process of execution,
unless the disposition be made in discharge of obligations legal
or moral.   I hold it to be fraudulent for a person to accept

and hold as a gift the money or property of an insolvent debtor, and thereby defeat the payment of pre-existing debts."

In the case under consideration it is made to appear that the intestate intended to make a most unreasonable provision for his wife, and to wholly disregard the claims of his creditors. He was fully apprised of his inability to pay his debts when he undertook to secure to her, by the expenditure of his own means, an estate certainly of fifteen thousand and very probably of twenty-five thousand dollars. In so doing he not only converted to her benefit, in the payment of the first premiums on the policies of insurance, money that in good conscience should have been paid to his creditors, but undertook that he would during the remainder of his life annually set apart out of his earnings for her benefit a similar amount. The circumstances connected with these transactions leave no doubt upon our minds that the insolvent husband had determined to provide for his wife and brother, and wholly to disregard the claims of his creditors. Under such circumstances a voluntary post-nuptial settlement can not be upheld.

We would not be understood as intimating that an insolvent debtor may not insure his life for the benefit of his wife when she has no considerable estate of her own. But the amount of the policy ought to be no more than will be sufficient to enable her, in the event of his death, by the exercise of proper prudence and economy, to support herself and family, and to afford to their children the opportunity of securing reasonable educations.

It is true that Chancellor Kent, in the case of Reeves v. Livingston (3 Johns. Chan. Rep. 497), in the application of the statute of 13 Elizabeth, held that no voluntary post-nuptial settlement was ever permitted to affect existing creditors, but we do not think the weight of authority will allow that statute an application so sweeping in its nature. We feel satisfied, however, that, independent of the statute, the common law

Stokes & Son, &c. v. Coffey, &c.

will permit no such settlement to be upheld to the prejudice of antecedent creditors, however it may be made or whatever shape it may take, when it is tinctured with actual fraud.

In this case the settlement consisting of life-policies, and not of a character of property which, if vested in the husband, could have been taken under execution, it is insisted that it can not be reached even by a proceeding in equity. Judge Story lays down the rule to be " that a voluntary settlement of stock or of choses in action, or of copy-holds, or of any other property not liable to execution, is good, whatever may be the state and condition of the party as to debts." (Story's Equity Jurisprudence, section 367.)

The course of reasoning by which this doctrine is attempted to be sustained is attacked by Chancellor Kent, who maintains that equity should interfere, whether the property could be reached by execution or not, to prevent debtors from converting their property into stocks, choses in action, etc., and settling it upon their families, in defiance of their creditors and to the utter subversion of justice (Bayard v. Hoffman, 4 Johnson's Chancery Reports, 452); and in a note to section 358 of Story's Equity Jurisprudence (fifth edition) the author admits that the cases cited by Kent go very far to establish the doctrine asserted by him, and adds that " whatever may be the true doctrine on this subject, a distinction may perhaps exist between cases where a party indebted actually converts his existing tangible property into stock, to defraud his creditors, and cases where he becomes possessed of the stock without indebtment at the time, or, if indebted, without having obtained it by the conversion of other tangible property into stock. Where tangible property is converted into stock to defraud existing creditors there may be a solid ground to follow the fund, however altered."

Since under our laws property, whether tangible or intangible, may be subjected by the creditor to the payment of his

debt by proceedings in equity, we can perceive no sufficient reason why we should recognize this distinction. The English courts have ceased to observe it since the passage of their insolvent debtor's act. (Northcut v. Dodd, 1 Craig & Phillips, 100.) The injury to the creditor is equally as great in the one case as the other. Besides this, as money may be seized and sold under execution, where the officer can without violence possess himself of it, it may be regarded as tangible property. Having no ear-marks, it loses its individuality by circulation, and therefore can not be followed into the hands of the fraudulent grantee. This fact is of itself a sufficient reason why the stock or other thing of value into which it may have been fraudulently converted should be seized by the chancellor in the hands of the fraudulent grantee, and subjected to the payment of the grantor's debts. This doctrine was recognized by this court in the case of Crozier v. Young (3 B. Monroe, 158), where the father converted his money into stock in the Center Bank of Kentucky in the name of his children. The court refused to subject the stock to the payment of the plaintiffs' claims, because they were subsequent instead of antecedent creditors, holding that the common law does not, like the statute against fraudulent conveyances, protect the interests of subsequent as well as precedent creditors. But even according to the rules of the common law these appellants are entitled to relief, they being antecedent creditors. The circuit court should therefore have adjudged the application to the payment of their claims the moneys collected by Mrs. Coffey on the ten thousand dollar policy in the St. Louis Mutual Company, which she admits was purchased by her husband with his own means.

The denial by Mrs. Coffey that the premium paid on the policy in the Kentucky Southern Mutual Company was paid out of the funds of her husband is by no means explicit, but was accepted as sufficient by the appellants. She offers no

rational explanation as to what funds were applied to the payment of this premium; but inasmuch as she is in possession of the proceeds of the policy which was made payable to her, and appellants have not proved the payment of the premium out of the husband's means, we do not feel authorized to adjudge that she shall be required to surrender the money thus realized to the payment of the intestate's debts.

The judgment of the court below as to Joseph Coffey must be affirmed on both the original and cross-appeals. The insurance, in so far as it was intended to secure the payment of what his brother owed him, and to indemnify him on account of his suretyship, had the effect of preferring him to other creditors. Such preference is not and has never been held actually fraudulent. As to the excess of the policy over the amount necessary to secure these ends, it was a mere gratuity, which he ought not to have been allowed to hold against such of his brother's creditors as saw proper to apply to the chancellor for the relief sought by these appellants.

Upon the return of the cause the court below will apply to the payment of the debts due from the intestate to these appellants such balance as may remain in the hands of Joseph after paying the debts due to him and those upon which he is surety. It will also apply to the same purpose such portion of the moneys collected by Mrs. Coffey on the two policies in the St. Louis Mutual Company as may be necessary to satisfy said claims in full.

Judgment as to Elizabeth Coffey reversed, and cause remanded for further proceedings in accordance with the principles of this opinion. Upon the cross-appeal the judgment is affirmed.