CASE 24—EQUITY—FEBRUARY 23, 1882.

## Adams' ex'x v. O'Rear, &c.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. A party being insolvent, bought and paid for a tract of land, causing the conveyance to be made to his wife by the vendor.
2. *Held*—That the conveyance is fraudulent as to preëxisting creditors.
3. The action is upon a new promise to pay the amount, and is not barred by limitation.

REID & STONE FOR APPELLANTS.

1. The action is brought not upon the account but upon a new promise to pay it. The suit is not within the statute of limitations. (Carr v. Robinson, 8 Bush, 274; Truesdale v. Anderson, 9 *Ib.*, 277; Hierony-mus v. Mayhall, 1 *Ib.*, 296.)
2. There can be no doubt that the conveyance to Rebecca Evans is volun-tary, and fraudulent as to preëxisting creditors of her husband. He paid for the land, and directed that the deed be made to her. (Miller v. Desha, 3 Bush, 212; Lowry v. Fisher, 2 Bush, 70; 7 *Ib.*, 217; *Ib.*, 337; *Ib.*, 585; 4 Met., 143.)
3. The court erred in suppressing appellant's deposition.

B. J. PETERS FOR APPELLEE.

1. The action should have been brought upon the new promise (if any was made) to pay the amount. Being upon the account, it is barred by the statute of limitations. (Carr v. Robinson, 8 Bush, 274; Trues-dale v. Anderson, 9 Bush, 277.)

2. Mrs. Evans' land cannot be subjected to the payment of this debt under the statute, even if it be valid and subsisting, and the case is not made out to subject it at common law. (Marshall v. Marshall, 2 Bush.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

Evans bought and paid for 18 acres and 1 rood of land, which he caused his vendors to convey to his wife.

At the time he did this he was indebted to the appellant's testator by two notes, and an account for $194.21.

The appellant began her suit by cross-petition in an action wherein Mrs. Evans' heirs-at-law were seeking to remove a mortgage from the land which they claimed by descent, alleging that Evans was insolvent, and fraudulently caused the conveyance to be made to his wife for the purpose of cheating and delaying his creditors, without any valid or valuable consideration, and prayed for the subjection of the land to the payment of said debts.

Evans' heirs, who were persons distinct from the heirs of his wife, were made defendants to the cross-petition, but the heirs of the wife were not made defendants; yet, having answered the cross-petition, they thereby entered their appearance, and became parties to it, and therefore there was no defect or want of necessary parties to appellant's action.

The appellees controverted the allegations of fraud, denied the account, and pleaded the statute of limitations to it, and traversed the alleged new promise to pay the account made by Evans within two years next before the filing of the cross-petition.

The reply denied that the new promise was barred by limitation, and the amended cross-petition reiterated its existence. It is insisted by counsel that the suit is upon the original account, and not upon the new promise.

If this be true, the action is barred; but we think the action is upon the new promise, and that it is sufficiently stated.

The sale and receipt of the goods itemized in the account; the promise made by Evans to the appellant and her testator also, within two years before suit, that he would pay the account, and his failure to pay for the goods, are expressly alleged by appellant, and what else is necessary to constitute a cause of action on the new promise we are unable to perceive.

The consideration, promise, and breach are averred by appellant and denied by appellees, and it seems to us that this constitutes an action and issue on the new promise.

Waiving any consideration of the competency of appellant as a witness against the appellees, who are heirs of a deceased person, we are of opinion that the other testimony in the record proves the justice of the account, and that Evans promised to pay it as alleged, and judgment should have been rendered in favor of appellant for it also.

Evans was insolvent when he paid for the land, and caused the deed to be made to his wife without any valuable consideration, and counsel for appellees contend that the conveyance cannot be avoided for two reasons: first, Evans' vendors honestly conveyed their title to the land, and innocently received the money for it; second, Evans, the debtor, did not convey the land to his wife.

Of course he could not convey the title, because it never had been vested in him.

These are in substance the reasons given in the cases of Crozier, &c., v. Young, &c., 3 Mon., 157, and Marshall, &c., vs. Marshall, &c., 2 Bush, 421, for the construction which confines the statute against fraudulent conveyances to con-

veyances or alienations made *by debtors* in fraud of their· creditors.

This construction of the statute was stated in the case of. Doyle, &c., v. Sleeper, &c., 1 Dana, 533, so clearly that there can be no misunderstanding it. The learned judge· said: ''But·the judges of England, with all' their zeal for extending, by a construction peculiarly latitudinary, the operation of the ·statute of 13th Elizabeth, never applied it to a case like this, in which the conveyance was made, not. *by* the debtor, or *of* his estate, but by another person, at his instance, and in consideration of his money. The *statute* was never applied to *purchases* by a debtor, but has been construed to operate only on *conveyances* by *him*.'' Citing. Crozier v. Young, and the two English cases of Procter v. Warner, Select Cases in Lord King's time, and Lampleigh v. Lampleigh, 1 Peere Williams' Reports.

While we assent to this construction of the statute, supported as it is by well understood precedents, we are not ready to agree with the position that such a conveyance as this can cover from the reach of preëxisting creditors the. property and money of. their debtor.

Beginning with the case of Crozier v. Young, 3 Mon., the· common ·law doctrine that '' fraud vitiates everything,'' has. never been denied by this court. And that case was decided not to be within the common law rule upon the sole ground. that the creditor failed to show that he had a preëxisting ·debt or demand, the court saying:

''Fraud is, indeed, odious to the common law, and is dis-- countenanced by it in every shape in which it may make its appearance; but the common law does not, like the statute· against·fraudulent conveyances, protect the interest of sub sequent as well as precedent creditors. A creditor, to be·

entitled to the protection of the common law against the
effect of a fraudulent transaction, must show that he had a
preëxisting debt or demand; for, otherwise, his rights were
not supposed by the common law to be injured by the fraud.
*But the creditors in this case have failed to show that they were
the creditors of Crozier when the fraudulent transactions of
which they complain took place.*"

While legal or constructive fraud does not exist at common law, and it takes cognizance of actual fraud alone, requiring proof of fraudulent intent, the consideration of love and affection between husband and wife will not be sufficient to support a conveyance as against preëxisting creditors where the husband was insolvent or indebted at its execution to a material extent; for the common law will not permit the obligations of the marriage relation to be used as an instrument of fraud.

Lord Northington said in Patridge v. Gopp, Ambler, 598: "I think no man has such a power over his own property to dispose of it so as to defeat his creditors, unless for consideration. It is the motive of the giver, not the knowledge of the acceptor, that is to weigh;" and being asked as to the extent of this doctrine, he said: "The fraudulent intent is to be collected from the extent and magnitude of the gift."

And in the discussion of this doctrine, this court said in Doyle v. Sleeper, 1 Dana, that there was no division of opinion between those who had differed about its soundness on this point, "that land fraudulently conveyed to a child instead of the father, and bought with the father's money, might be subjected to his debts;" and decided that Doyle, who was insolvent, having purchased and paid for real estate with his money, and caused the title to be

conveyed to his children, committed a fraud upon his credit-
ors, and subjected the land to the payment of his debts.

The fact of mere indebtedness will not prevent a father
from making proper advancements to his children, or such
a settlement upon his wife as "a clear sense of moral duty
requires him to make," nor will they be disturbed after they
are made. But what is a justifiable settlement or proper
advancements depends upon the intent of the father and
his condition, both as to property and indebtedness, at the
time he makes them.

It is said in Stokes & Son v. Coffey, &c., 8 Bush, 537,
that "such advancements or settlements, to be upheld.
against antecedent creditors, must be characterized by the
utmost good faith."

And a disregard for the interest of creditors, such as is.
shown by the act of Evans, who, being insolvent, paid for
the land himself, and caused the title to be made to his wife,
will render the transaction fraudulent.

For had Evans been solvent, and without creditors, it is.
highly probable that the conveyance would have been made
to himself instead of his wife, as no necessity for avoiding
their claims would then have pressed him.

The facts in this case bring it within the principles of
the common law, which renders fraudulent, as to prior debts,
the voluntary conveyances of debtors who are insolvent, or
in such doubtful circumstances as renders it hazardous to
the rights of their creditors. The fact that this convey-
ance does not come within the statute gives it no sanctity
against the principles of the common law, which have not
been repealed but enlarged by the statute as to the class of
cases embraced by it.

Arnold's ex'x v. The Commonwealth.

And it seems to us it would be against the substance of justice to allow an insolvent debtor to securely cover his money and property from his creditors by investing it in property, the title to which he causes to be invested in another, who pays or renders him no valuable consideration therefor.    It seems that such a case is embraced by section 20, article 1, chapter 63, General Statutes, which provides, when a deed shall be made to one person, and the consideration shall be paid by another, that "such deeds shall be deemed fraudulent as against the existing debts and liabilities of the person paying the consideration."

This section so modifies section 19 of the same article, which abolishes resulting trusts, as to prevent its misapplication to those trusts which result to the debtor for the benefit of creditors.

Wherefore, the judgment is reversed, and cause remanded with directions to render judgment in conformity to this opinion.