·834      KENTUCKY REPORTS.    [Vol: 139.

Crooke v. Hume's Ex'tx, &c.—N. B. of Cyn. v. Hume's Ex'tx, &c.

CASE 108.—ACTION BY VIRGINIA CROOKE AGAINST THE
EXECUTRIX AND HEIRS AT LAW, &c., OF W. S.
HUME, DECEASED.—April 22, 1908.

## Crooke v. Hume's Ex'tx, &c.
## National Bank of Cynthiana v. Hume's Ex'tx, &c.

Appeals from Madison Circuit Court.

Judgment in the Crooke case reversed and in the
Bank case affirmed.

1.   Fraudulent Conveyances—Cenveyance or Devise by Parent to
     Child—Void as to Existing Creditors.—A father can not by his
     will give to his child property to the detriment of his credi-
     tors, and such gifts or conveyances, where they are in the
     shape of real estate, will be set aside at the suit of existing
     creditors as fraudulent.
2.   Same—Rule as to Subsequent Creditors—Intent Must be
     Shown.—While all voluntary conveyances are, under the
     statute, void as to existing liabilities, a different rule obtains
     as to subsequent creditors, and in order that such convey-
     ance may be successfully assailed by a subsequent creditor it
     must be shown that it was made with a fraudulent intent.
3.   Creditor and Debtor—Return of "No Property"—Necessity
     Therefor—Under Kentucky Statutes section 1907a, enacted in
     1896, the old rule of practice was abrogated and an entirely
     new rule substituted therefor, so that now a creditor upon
     learning that his debtor is disposing of his property and con-
     veying away his real estate without making provision for the
     payment of his debt, he may go into a court of equity and
     subject the property so conveyed without first having reduced
     his claim to a judgment and had return of "no property
     found," thereon.

HAZELRIGG, CHENAULT & HAZELRIGG and WM. M'KEE
DUNCAN for appellant, National Bank of Cynthiana.

C. H. BRECK and W. S. PRIOR for appellant, Crooke.

Crooke v. Hume's Ex'tx, &c.—N. B. of Cyn. v. Hume's Ex'tx, &c.

A. R. BURNAM & SON, C. J. WIMBERLEY and L. B. HER-RINGTON for appellees, W. S. Hume's Ex'tx., &c.

OPINION OF THE COURT BY JUDGE LASSING.

These appeals involve a common question and are, therefore, considered together.

In the Spring of 1906, Virginia Crooke filed a peti-tion in equity in the Madison Circuit Court against the Executrix, heirs-at-law, &c., of W. S. Hume, wherein she alleged, in substance, that W. S. Hume, a resident of Madison county, Kentucky, died in August, 1885, the owner of a large landed and per-sonal estate. That he left a will by the terms of which he directed his wife, whom he named as Execu-trix, to keep his estate intact until his youngest child, a daughter, became 18 years of age, when the estate should be settled up and divided among his children and heirs-at-law. At the time of his death, W. S. Hume was operating a distillery on Silver Creek, known as W. S. Hume & Company, and was the owner of practically all of its capital stock. The stock of this distilling company constituted the bulk of his personal estate. Under his will, he directed that his executrix continue to operate the distillery until the period for distribution should arrive. That in accord-ance with the express provisions of the will, the exe-cutrix did so operate the distillery, and, as authorized by the will of her deceased husband, she borrowed a sum of money from one, Patty M. Hume, to be used in operating the distillery. That the note evidencing this loan was renewed from time to time, until, on the 20th day of February, 1902, with accrued interest, it amounted to $5,237.86. That on said date W. S. Hume & Company, together with E. B. Hume, S. B. Hume and E. M. Hume, the Executrix, executed to

836 KENTUCKY REPORTS. [Vol. 139.

Crooke v. Hume's Ex'tx, &c.—N. B. of Cyn. v. Hume's Ex'tx, &c.

said Patty M. Hume a renewed note for the amount of the debt then due. Said note was drawn due twelve months from date with interest from date until paid, and was subsequently assigned by Patty M. Hume, for value received, to plaintiff, Virginia Crooke, and that plaintiff was the owner and holder thereof. That in the year 1898, the youngest daughter of W. S. Hume, having arrived at the age of eighteen, the executrix, in accordance with the provisions of the will, sold the distillery and the real estate left by her husband, and thereafter disposed of all of the whisky on hand; receiving from the joint sales of real and personal property of her husband approximately $300,000. That, of the money so realized out of the sale of the real and personal estate of her husband, she invested something like $12,000 in a house and lot in Richmond, Kentucky, taking the deed thereto in her own name, and invested the further sum of $25,787.56 in a farm of 391 acres in Madison county, Kentucky, taking the deed thereto in the name of one of her daughters, Mary Chenault. The house and lot and the farm are described and set out in the petition by metes and bounds.

The petition further alleges that the executrix had distributed the estate of her deceased husband among his children and heirs-at-law and made the investments in favor of herself and her daughter, as above indicated, and settled with the firm of W. S. Hume & Company, leaving the debt of plaintiff wholly unpaid. She prayed for the settlement of the affairs of W. S. Hume & Company and of the estate of W. S. Hume, and for the payment of her debt, interest and cost, and for all proper and necessary relief. A demurrer was sustained to this petition and thereafter the plaintiff filed an amended petition in which the alle-

gations of the original petition were set out with more particularity, and it was further pleaded that the executrix had made an assignment for the benefit of her creditors to her son-in-law, Harvey Chenault, husband of the defendant, Mary Chenault, to whom the farm of 391 acres had been conveyed, and that Harvey Chenault, as assignee, had sold the Richmond property to Mrs. Annie Collins for about $8,-600.00, and that the purchaser had executed her bonds therefor, and that this purchase money represented a part of the assets of W. S. Hume & Company, or of the estate of W. S. Hume.

In this amended petition she prayed judgment against W. S. Hume & Company, E. B. Hume and E. M. Hume for her debt, and asked that she be adjudged a lien for the amount of her judgment and debt upon the 391 acres of land described in the original petition, and upon the proceeds arising from the sale of the house and lot in Richmond, which was fully described in the original petition. Copies of the will of W. S. Hume and of the deed to Mary Chenault were filed with these pleadings. Demurrers were filed on behalf of the several defendants to the petition as amended, and, upon hearing, these demurrers were sustained with leave to amend. The defendants, E. B. Hume and E. M. Hume, filed their answers pleading their discharge in bankruptcy, and asked to be dismissed. The defendant, Patty M. Hume, pleaded that the note was assigned by her to plaintiff without personal recourse, and she asked to be dismissed.

Thereafter the plaintiff appeared in court and asked leave to withdraw the amended petition filed by her and file a new amended petition in lieu thereof. To this motion the defendants objected, the court

838        KENTUCKY REPORTS.        [Vol. 139.

Crooke v. Hume's Ex'tx, &c.—N. B. of Cyn. v. Hume's Ex'tx, &c.

overruled the objection, the amended petition was withdrawn and a new amended petition was filed in lieu thereof. In this amended petition she sets out fully the incorporation of the company of W. S. Hume & Company, the sale of its corporate business and property, the investment of the sums of money made by it in the house and lot and farm, as fully set out in the original petition, and, pleaded that, with a full knowledge on the part of the officers of the company of the existence of her debt, they wrongfully and illegally misapplied and paid out all of the assets of the company and left nothing with which to satisfy her debt, and refused to pay same or any part thereof. She prayed as in the original and amended petition. The demurrer was renewed by the defendants and sustained. Plaintiff was given judgment against the firm of W. S. Hume & Company for the full amount of her debt with interest and cost. This was at the October term, 1906, and on the 9th day of January following, execution was issued there on and on the 10th day of January was returned "no property found." Thereafter the plaintiff filed another amended petition wherein she set up the recovery of the judgment against W. S. Hume & Company, the issual of the execution thereon, and the return of "no property found." She further in this amendment, pleaded the purchase out of the funds of W. S. Hume & Company of the property described in the original petition, and prayed that it be subjected to the payment of her debt. To the petition, as thus amended, a demurrer was filed and sustained, in so far as plaintiff sought to have subjected to the satisfaction of her debt the farm or the proceeds arising from the sale of the house and lot in Richmond. The amended petition, which set up

the recovery of the judgment, the execution thereon and the return of "no property found" was, on motion of the defendants, Mary Chenault, &c., stricken from the file and the petition was, as to all the defendants, except the firm of W. S. Hume & Company, dismissed.

Shortly after the institution of the suit as above set out, by the plaintiff, Virginia Crooke, the National Bank of Cynthiana filed its petition to be made a party, in which, after alleging its incorporation with capacity to sue, &c., it adopted the allegations of the petition of the plaintiff, Virginia Crooke, as amended, and alleged further that on the 27th day of May, 1905, the defendant, W. S. Hume & Company, executed and delivered to E. H. Taylor, Jr. & Sons, their promissory note, whereby they promised and agreed to pay to the said E. H. Taylor, Jr. & Sons, four months after date, at the Richmond National Bank, in Richmond, Kentucky, the sum of $2,983.62, for value received and that prior to the maturity of said note it was sold, discounted and transferred by E. H. Taylor, Jr. & Sons to the National Bank of Cynthiana, and that it was then the owner and holder thereof. It asked that its petition be taken as its answer and made a cross-petition against the defendants to said suit. Demurrers were filed to this petition to be made a party by the several defendants. These demurrers were sustained with leave to amend. The said National Bank, of Cynthiana thereupon filed an amended pleading where in it alleged that the firm of W. S. Hume & Company was insolvent, and that certain of its creditors were seeking to have it adjudged a bankrupt, and, that the assets remaining in its hands were not more than sufficient to pay the costs of the litigation

in the bankrupt court. A demurrer was sustained to this pleading with leave to amend. The petitioner declining to plead further, the petition was dismissed.

The correctness of the ruling of the trial judge in dismissing the petition of the plaintiff, Virginia Crooke, and the petition of the National Bank of Cynthiana, to be made a party, are the only questions to be determined upon this appeal.

The petition in this case, while somewhat involved and awkwardly drawn, presents the following state of facts. W. S. Hume died in 1885, leaving a will, by the terms of which he directed his wife to take charge of his property, manage his firm and operate his distillery until his youngest daughter arrived at the age of eighteen, when he directed his estate to be distributed among his wife and children. In order that she might properly and successfully operate and conduct the distilling business, he gave her ample power to pledge his estate in her hands, as though it was willed to her in fee, should it become necessary. She did so manage the business and operate the distillery, and, in the conduct of the distilling business, borrowed a sum of money from Patty M. Hume in the name of the firm and the note evidencing this indebtedness was renewed from time to time, the last time it was renewed being on the 20th of February, 1902, when it amounted to $5,237.86. That this note was for a valuable consideration assigned to the plaintiff, who was, at the date of the institution of this suit, the owner and holder thereof. That the assets of the firm of W. S. Hume & Company had been illegally, improperly and wrongfully appropriated by the executrix and one of the devisees, and that the assets so improperly appropriated had been invested in the house and lot and a farm, both

of which are described with such particularity as that they could be readily identified. Under this state of facts she asks that this property be subjected to the payment of her debt. The pleading does not give the date upon which the loan was originally made, but inasmuch as it alleges that the money was used in the conduct of the distilling business, and the note was renewed from time to time as it fell due prior to February 20th, 1902, this is in substance an allegation that this money was borrowed before the date of the sale of the distilling business in 1898 or 1899.

The deed to the 391 acres of land which it is sought to have subjected to the satisfaction of this debt shows that this land was purchased for the defendant, Mary Chenault, in April, 1901, or some years after the money in question was borrowed from Patty M. Hume.

The pleadings do not show when the house and lot in Richmond was purchased, but it is stated by counsel in brief, and not contradicted, that this transaction took place about 1889, or at least, many years before the institution of this suit.

Under the rule that pleadings be construed most strongly against the pleader, in the absence of any allegation in the petition or its several amendments which could be taken as even inferentially declaring that the Patty Hume debt was created prior to the purchase of the house and lot, it must be presumed that it was created subsequent thereto. The debt of the National Bank of Cynthiana was created in 1905, or something like four years after the purchase for Mary Chenault of the farm in question and many years after the purchase of the house and lot by the executrix and many years after all of the other transactions complained of therein.

By the terms of the will of W. S. Hume, his wife, as executrix, was to conduct the affairs of his business until his youngest daughter arrived at the age of eighteen. The pleadings show that she arrived at this age in the fall of 1898, or the spring of 1899, at which time, in accordance with the provisions of the will, the executrix proceeded to sell the property and distribute the estate. After this time the executrix had no further right, power or authority, under his will, to continue to operate the distilling business and it was her plain duty, as executrix and trustee of the estate, to make distribution thereof according to the terms of the will. No trust was created by the will for the purpose of operating the business of W. S. Hume & Company. The most that can be claimed for appellant in regard thereto is that the executrix, by the terms of the will, was authorized to pledge the estate of her husband to enable her to secure funds to properly conduct the business during the years when she was authorized to so conduct it. In other words, it was the desire of the decedent, W. S. Hume, that his wife should conduct the distilling business and manage his property, as he himself had done, until his youngest child arrived at eighteen years of age, at which time he wanted his estate settled up and divided among his children.

For appellants it is insisted that the purchase of the house and lot in Richmond, and of the farm in Madison county, by the executrix with the funds of W. S. Hume & Company was in direct violation of the provisions of section 1907, of the Kentucky Statutes, which provides that: "Every gift, conveyance, assignment, transfer, or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities." * * *

And, that the said executrix, or W. S. Hume & Company, had no more right or authority, in law, to make these voluntary conveyances or settlements than W. S. Hume himself, if living, would have had. The correctness of this contention, as to debts created prior to the date of the voluntary conveyance, is too well settled to admit of argument, for in the cases of Trimble v. Ratliff, 9 Ben. Monroe, 511; Enders v. Williams, 1 Met., 346; Duhme v. Young, 3 Bush 343; Loury v. Fisher, 2 Bush, 70, and Rucker v. Abell, 8 Ben Monroe, 566, this court has expressly held that a father could not give to his child or children property to the detriment of his creditors, and such gifts or conveyances, where they are in the shape of real estate, will be set aside at the suit of existing creditors as fraudulent. It is true that there are instances in which this court has upheld a reasonable settlement by a husband or father upon his wife or child (Stokes v. Coffey, 8 Bush, 533, and Thompson v. Cundiff, 14 Bush, 566, but in these and kindred cases it was expressly held that, where the settlement or advancement was not reasonable, taking into consideration the financial condition and circumstances of the donor, the conveyance would not be upheld.

In the case at bar, for the purposes of the demurrer it is admitted that, since the purchase of the house and lot and the farm in question, there remains nothing whatever with which to satisfy the debts of the plaintiff and petitioner herein, hence, under the present condition of the pleadings in this case, a consideration of that class of cases which would permit a settlement of a reasonable sum upon the widow or child, without violating the provisions of the statute, will not be entered into.

The purchase of the house and lot having been made prior to the creation of the debt, of which plaintiff's note is a renewal, plaintiff is not in a condition to complain of the ruling of the trial judge, in so far as this conveyance is concerned, but not so as to the farm; her debt was created before the purchase of the farm, and, at the date of its purchase, was an existing liability against the firm of W. S. Hume & Company, and was a debt which, under the express provision of the will of W. S. Hume, his wife, as executrix, was authorized to create, and this being true, the purchase of the farm and voluntary conveyance thereof to the appellee, Mary Chenault, taking the allegations of the petition as true, was a constructive fraud and void as to this liability While all such conveyances are, under the statutory provision, declared to be void, as to existing liabilities, a different rule obtains as to subsequent creditors; and in order that a voluntary conveyance may be successfully assailed by a subsequent creditor it must be shown that it was made with a fraudulent intent. The mere fact that it was voluntary being held insufficient to authorize a court to set it aside. (Place v. Rhem, 7 Bush, 585; Enders v. Williams, 1 Met., 346; Hanson v. Buckner, 4 Dana, 251, and O'Kane v. Vinnedge, 21 Ky. Law Rep., 1551.) In the case at bar, while the petition of the National Bank of Cynthiana charges that the executrix is wrongfully in the possession of the Richmond house and lot, and the appellee, Mary Chenault, is wrongfully in the possession of the farm, and that each of said properties in fact constitutes a part of the estate of W. S. Hume, still the petition fails to allege, for the reason, we presume, that it is not true, that these conveyances were made with a fraudulent intent to defeat its claim, and the

same may be said of the other sales and transactions, the validity of which are attacked by this petitioner, hence the trial judge correctly held that the said bank failed in its petition to state grounds which authorized a subjection of the said house and lot, farm or other property to the payment of its debts. It was manifestly upon this ground that the trial judge held the petition of the bank to be insufficient. The record does not show the ground upon which he held the petition as amended to state no cause of action. Two possible grounds are suggested. First, that plaintiff's claim bears a later date than that of either of the conveyances sought to be set aside, but it is alleged that the note evidencing this debt is a renewal of an older debt, and in the case of Loury v. Fisher, 2 Bush, 70, it was expressly held that a creditor was not deprived of his right to attack a fraudulent conveyance by reason of the fact that the note evidencing his debt had been renewed after the date of the conveyance which he sought to avoid, hence the plaintiff, being substituted to all of the rights which Patty M. Hume would have had if suing in her own proper person, this ground must fail, and, though the note bears a date later than that of the conveyance, still, under the allegations of the petition, it must be held to be a debt antecedent, at least, to the conveyance of the farm in question. The other, and apparently the real, ground upon which the trial judge held the petition to be insufficient, is one of practice.

From the briefs in the case we conclude that appellees, and the court, as well, were of opinion that, in order for plaintiff to maintain her suit at all it was necessary for her first to have reduced her debt against W. S. Hume & Company to a judgment and have a return of "no property found" thereon. That

this was the ground upon which the court held the petition insufficient is further evidenced by the fact that during the progress of the trial plaintiff took a personal judgment in this suit against W. S. Hume & Company, had an execution issued thereon and returned "no property found," and thereafter filed an amended petition setting up these facts and prayed as in her original petition. Of course, if plaintiff's right to subject this property had to be based upon a return of "nulla bona," then clearly the learned judge correctly held that she stated no cause of action, for she could not, by a subsequent act, acquire a right which did not then exist and in this way cure a pleading which was fatally and wholly defective at the time she instituted her suit, as each amendment must relate to and speak as of the time of the filing of the original suit. Formerly it was held that in order for one to successfully attack and set aside a conveyance as fraudulent he must first reduce his claim to a judgment and have a return of "no property found" thereon. This return, in fact constituted the basis or foundation of the suit in equity seeking to set aside the conveyance. This procedure was necessarily tedious and frequently worked great, if not irreparable, hardships upon creditors, and to remedy this fault and give to a creditor a more speedy trial and expeditious remedy the Legislature, in 1896, enacted section 1907a, which is as follows: "That hereafter in this Commonwealth it shall be lawful for any party who may be aggrieved thereby, when any real property has been frequently conveyed, transferred or mortgaged, to file, in a court having jurisdiction of the subject-matter, a petition in equity against the parties to such fraudulent transfer or conveyance or

.mortgage, or their representatives or heirs, alleging .therein the facts showing their right of action and alleging such fraud, or the facts constituting it, and describing such property, and when done a lis pendens shall be created upon the property so described, and said suit shall progress and be determined as other suits in equity, and as though it had been brought on a return of nulla bona, as has heretofore been required. All laws, or parts of laws, in conflict herewith are hereby repealed."

By this enactment the old rule of practice was abrogated and an entirely new rule was substituted therefor, so that now a creditor upon learning that his debtor is disposing of his property and conveying away his real estate without making provision for the payment of his debt can go into a court of equity and, by complying with section 1907a, Kentucky Statutes, subject the property so alienated or conveyed, without having first reduced his claim to a judgment and had a return of "no property found" thereon. The validity of this act of 1896 has been considered and upheld by this court in the cases of O'Kane v. Vinnedge, 21 Ky. Law Rep., 1551; Campbell v. Trosper, 22 Ky. Law Rep., 277, and Locheim v. Eversole, 24 Ky. Law Rep., 1031.

We are of opinion that plaintiff, in her petition as amended, stated a cause of action in so far as it asserted a right to have subjected to the payment of her debt the land which had been conveyed to the appellee, Mary Chenault; that she did not state a cause of action against, nor show in herself a right to subject to the payment of her debt, the house and lot in Richmond.

For the reasons indicated the demurrer to the petition should have been overruled.

The case of Virginia Crooke v. W. S. Hume's Ex'tx, &c., is reversed and remanded, for further proceedings consistent with this opinion; and the case of the National Bank of Cynthiana v. W. S. Hume's Ex'tx, &c., is affirmed.