### Luther, et al. v. Campbell, et al.

(Decided February 17, 1925.)

Appeal from Graves Circuit Court.

1. Husband and Wife—Wife who Permitted Husband to Hold Himself Out as Owner of Realty Held Not Entitled to Assert Claims Thereto as Against his Creditors.—Wife, who permitted her husband to hold himself out as owner of property which belonged to her, and permitted him to deal with it until he became financially involved, held precluded from asserting her claims thereto.

2. Fraudulent Conveyances—Insolvent Debtor May Not Prefer Creditor, and Attempt to do so Constitutes Preferential Act and Fraud Vitiating Whole Transaction.—Under Kentucky Statutes, section 1910, insolvent debtor cannot prefer one creditor over another, and attempt to pay one creditor, his wife, and leave another unpaid, is such a preferential act and fraud on unpaid creditors as vitiates whole transaction.

HOLIFIELD, GARDNER & McDONALD for appellants.

HESTER, SEAY & HESTER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant Luther commenced this action in the Graves circuit court against Ed Campbell and his wife, Cassie Campbell, upon a note for something more than $900.00, executed by Ed Campbell, and to have a certain house and lot in the town of Wingo, Kentucky, deeded to Mrs. Cassie Campbell, adjudged to be the property of her husband, Ed. Campbell, and subject to his debts, in-

cluding that of appellant Luther. After Ed Campbell had filed his voluntary petition in bankruptcy his trustee, J. E. Warren, filed his intervening petition praying it be adjudged that Ed Campbell furnished all the purchase money which paid for the real estate deeded by Mrs. Akers to Mrs. Cassie Campbell, and that the same be subjected to the debts and liabilities of her husband, Ed Campbell. Ed Campbell made no defense to the suit on the note or otherwise, and judgment was entered in favor of Luther against Ed Campbell. But Mrs. Campbell filed her separate answer in which she averred that the real estate mentioned in the intervening petition of the trustee, Warren, as well as that described in the petition of appellant, Luther, being the house and lot in Wingo, was her individual property, paid for with money earned by her keeping boarding house at Sedalia, Kentucky, and, therefore, not subject to the debts of her husband, Ed Campbell. The Campbells were married in 1900. He owned at that time a farm and some personal property. She had a note of $150.00 due her which was afterwards paid. She had some other personal property. Campbell's farm appears to have been acquired several years before. When one of their children became of school age they desired to move closer to a school. At Sedalia was a dormitory for students, erected by public-spirited citizens who desired to build up the high school in that town, and forming a corporation, had raised the money with which to build a boarding hall. It cost some thirty odd hundred dollars, but had not been a success financially, and the stockholders were anxious to dispose of their holdings. The Campbells rented the building for one year at $15.00 per month, this rental to be applied upon an indebtedness of about $180.00 which the corporation owed on the building. After occupying the house for some months and learning that the stock of the corporation could be purchased on a basis of about fifty cents on the dollar, Ed Campbell purchased some of it, paying for it with his property. He traded a mule for some stock, then other property. When he had acquired about fifty per cent of the stock it was found the balance could be purchased for $700.00 or $800.00, and this was done, notes being executed. The deed was made by the corporation to Ed Campbell for the dormitory and lot, and the Campbells continued to live there. The debt was paid off, Mrs.

Campbell says, by her efforts and management in conducting the boarding house. The creditors insist, however, that the property belonged to Ed Campbell and that the boarding house business was conducted by him in his name all the time the Campbells lived there. At any rate the groceries and supplies were bought for the boarding house on his credit and in his name.

In September, 1919, Ed Campbell sold the dormitory property to John Hobson for $3,500.00, Hobson paying him $2,000.00 in cash and executing to Ed Campbell a note for $1,500.00. With $1,500.00 or $1,600.00 of the $2,000.00 Ed Campbell bought a house and lot in Wingo, taking deed to himself. After keeping it some years he sold it to his sister for $900.00. He became involved financially, having lost money in two or three small ventures. About this time Mrs. Campbell purchased from Mrs. Akers a house and lot in Wingo at the price of $2,500.00 on which was paid the Hobson note of $1,500.00, and the balance was arranged by loans which will hereafter be more fully explained. This is the property in dispute.

It is Mrs. Campbell's contention that when the dormitory property was purchased she entered into an agreement with her husband, Ed Campbell, by which she was to run the boarding house and earn the money with which to pay for the property and it was to become hers; and, further, that when the property was sold to Hobson it was with the understanding that her husband was acting for her, and as her trustee was to receive and hold the money and note for her use and benefit. The whole litigation revolves around the purchase, ownership and sale of the dormitory property. The dormitory property cost $1,600.00. As said above, some of the stock in the dormitory company was purchased by Ed Campbell in exchange for a colt. He also traded his horses for stock in the building. His wagon, worth $50.00, was traded for stock. All this property was exempt to him as a *bona fide* householder. When the last half of the stock was purchased for $700.00 the money was borrowed by Ed Campbell, and two of his neighbors became surety for him on the note.

When Ed Campbell sold the Chandler property in Wingo for $900.00 he deposited $500.00 in the bank and used the other for other purposes. The $500.00 thus deposited was covered by the garnishment of the bank

when the suit of appellant Luther was commenced. This money was later turned over to the trustee in bankruptcy.

When the case was submitted the lower court found that the dormitory at Sedalia was purchased by Ed Campbell at the instance of his wife, Cassie, on an agreement that if it could be paid for by her keeping boarders that the property should belong to her; and, further, that it was agreed between the husband and wife that at the time of the borrowing of the $700.00 with which the last half of the stock in the dormitory was purchased, the dormitory should be mortgaged instead of the farm owned by Campbell. The court further found that Ed Campbell purchased certain of the stock in the dormitory corporation with his live stock, but that Mrs. Campbell by keeping boarders raised money with which she repaid him for all he put into the stock. With respect to the sale of the dormitory the court found that Ed Campbell, when approached, referred the matter to his wife, and she agreed to the sale of it on condition that the purchase money was to be hers and she would use it in purchasing a home in Wingo, where there was a school. And further, that Ed Campbell received the money and note from Hobson in trust for his wife, Mrs. Campbell, and that he used $1,600.00 of it in paying Chandler for the house and lots in Wingo, with her consent, and that Mrs. Campbell purchased from Mrs. Akers a house and lot in Wingo, paying the Hobson note of $1,500.00, assuming a $500.00 lien against the property, and executing her note signed by herself and husband for $600.00. The court also found that at the time Ed Campbell was not in debt.

With respect to the $500.00 attached in bank as the money of Ed Campbell the court held it was not subject to the claim of Mrs. Campbell, she having allowed her husband to deposit it in his name and it to remain there until after the contracting of the indebtedness out of which this litigation arose. It is from that judgment that this appeal is prosecuted.

Without going into all of the evidence in detail it will be sufficient to say that it is admitted the dormitory property at Sedalia was purchased by Ed Campbell and the deed made to him. He was the owner of it at that time. Mrs. Campbell contends she was to have the property provided she could make enough money from the boarding house with which to pay for it. In other words, she was to have the right to purchase it from her husband,

Ed Campbell. She says she did provide the money with which to pay the purchase price. If this be true, then she should have required her husband to make to her a deed for the property. At any rate, when it was sold to Hobson she should have had the note for the purchase price made to her and have received and controlled the moneys paid by Hobson. On the contrary, she allowed the note to be made to her husband, Ed Campbell, in whom the title to the dormitory was at that time, and permitted her husband to receive the $2,000.00 cash paid, to reinvest part of it in the house and lot in Wingo, taking title to himself. All these things are wholly inconsistent with appellee, Cassie Campbell's, contention that she was the real owner of the property. That she helped to earn the money which paid for it we have no doubt, but after the husband became involved financially it was too late for her to assert her claim to the property against his creditors since she had allowed her husband to hold the property in his name and to hold himself out as the owner thereof, thus obtaining credit. If it be conceded that Mrs. Campbell did furnish the money or a part of it with which the dormitory property was purchased she admits she allowed her husband to take title in his own name and to hold himself out to the commercial world as owner thereof, and with her knowledge and consent obtained credit, contracted debts, which is sufficient to close her mouth now when she would assert her claim to the property. 27 C. J. 645; 9 Ky. Op. 907; Long v. Bank, 28 Rep. 913.

An insolvent debtor, as was appellee, Ed Campbell, can not prefer one creditor over another; and when he attempted to pay one creditor, leaving another wholly unpaid, it is such a preferential act and fraud on the unpaid creditor or creditors as vitiated the whole transaction. Kentucky Statutes, section 1910; Adams, Executor v. O'Rear, 80 Ky. 129.

As the judgment must be reversed upon the merits we will not enter into a discussion of the insufficiency of the separate answer of Mrs. Cassie Campbell, to which a general demurrer was overruled.

If it were possible under the state of the evidence we would gladly concur in the judgment of the learned chancellor, but the great weight of the evidence, as we read it, is against his finding, and the judgment must be reversed.

Judgment reversed with directions to enter a judgment subjecting the house and lot in Wingo conveyed by  -

Mrs. Akers to Mrs. Campbell to the debts of appellee, Ed Campbell, allowing him, of course, such exemptions as by law he may rightfully claim.

Judgment reversed.